# 14-1496-CV

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

WILLIAM F. SANFORD, Individually and as Executor of the
Estate of GERLINDE ULM, SANFORD, Deceased

*Plaintiff - Appellant*

V.

TIAA-CREF INDIVIDUAL & INSTITUTIONAL SERVICES, LLC,
GERD SCHNEIDER, and GEORGIA SCHNEIDER

*Defendants - Appellees*

ON APPEAL FROM UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

## BRIEF ON BEHALF OF
## PLAINTIFF - APPELLANT

---

Robin L. Roberts (MB #5596)
Robin L. Roberts, Attorneys at Law, PLLC
P. O. Box 1953
Hattiesburg, MS 39403-1953
(601) 544-0950; (601) 450-5395 (fax)
Email: robin@rablaw.net

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

I.     JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       A.    PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . 3

       B.    STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . 12

V.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       A.    The District Court erred by failing to apply a *de novo* standard of review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       B.    The District Court erred in failing to admit and consider Gerlinde Sanford's medical records. . . . . . . . . . . . . . . . . . . . 18

       C.    TIAA's decision to deny Sanford's claim should be reversed because it is erroneous as a matter of law. . . . . . . . . 21

              1.    The POA was legally defective because Gerlinde Sanford lacked mental capacity to sign it. . . . . . . . . . . 21

              2.    TIAA's acceptance of the COB by a third party power of attorney was erroneous as a matter of law. . . 23

# TABLE OF CONTENTS (Continued)

Page

    3.    The COB is defective because a material change was made by one person when the POA required joint action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    D.    TIAA's decisions did not meet the arbitrary and capricious and substantial evidence tests required by ERISA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

        1.    TIAA's failure to follow the Plan's procedure makes its decision arbitrary and capricious. . . . . . . . . . 29

        2.    Even after a proper denial of the initial claim, Sanford still has administrative due process rights. . . . 33

    E.    Plaintiff's State-Law Claims/the Schneider's Motion to Dismiss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

    VI.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULES 32(a)(5) AND (6) AND 32(a)(7)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

ADDENDUM - Special Appendix. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    Memorandum Opinion. . . . . . . . . . . . . . . . . . . . . . . . . . . . A714-A738
    Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A739

# TABLE OF AUTHORITIES

Page

## Cases

***Biomed Pharmaceuticals, Inc. v. Oxford Health Plans (N.Y.), Inc.*,**
  831 F. Supp. 2d 651 (S.D.N.Y. 2011)..................................... 19
***Booton v Lockheed Medical Benefit Plan*, 110 F.3d 1461 (9th Cir. 1997)...... 34**
***Callister v. Graham-Paige Corporation*, 146 F.Supp. 399**
  (D.C. Del. 1956). .............................................. 28
***Castellano v. Bd. of Trustees*, 937 F.2d 752 (2d Cir. 1991). ............... 35**
***Cook v. N.Y. Times Co. Group Long Term Disability Plan*,**
  2004 U.S. Dist. LEXIS 1259 (S. D. N. Y.)....................... 29, 31
***DeFelice v. American International Life Ins. Co.*, 112 F.3d 61**
  (2d Cir. 1997). ............................................... 18
***Egner v. States Realty Company and Others*, 26 N.W.2d 464 (Minn. 1947).... 28**
***Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002)............. 14, 29**
***Firestone Tire & Rubber v. Bruch*, 489 U.S. 101 (1988). ................ 1, 14**
***Gates v. United Health Group Inc.*, 2014 U.S. App.**
  LEXIS 6136, (2d Cir. N.Y. Apr. 3, 2014). ........................ 21
***Hartford Life Insurance Co. v. Einhorn*, 676 F. Supp. 2d 116**
  (E.D.N.Y. 2009). .............................................. 24
***In the Estate of Marriott*, 927 N.Y.S. 269 (N.Y. App. 2011). ............... 27**
***In the Matter of Berg*, 23 Misc. 3d 1127(A), 1127A (N.Y. Sup. Ct. 2009). .... 21**
***In the Matter of the Estate of Tumilewicz*, 340 N.Y.S.2d 159**
  (N.Y. Surr. 1973)................................................ 28
***Juliano v. The Health Maintenance Organization of***
  ***New Jersey, Inc., dba U.S. Healthcare*, 221 F.3d 279**
  (2d Cir. 2000). ......................................... 4, 21, 35
***Kinstler v. First Reliance Standard Life Ins.*, 181 F.3d 243**
  (2d Cir. 1999). ................................... 13, 15, 17, 21
***Krauss  v. Oxford Health Plans, Inc.*, 517 F.3d 614 (2d Cir. 2008)..... 14, 16, 29**
***Krishna v. Colgate Palmotive Co.*, 7 F.3d 11 (2nd Cir. 1993). ............... 18**
***Life Ins. Co. of N. Am. v. Leeson*, 2002 U.S. Dist. LEXIS 18530**
  (S.D. Ohio 2002)............................................... 27
***Magruder v. Northwestern Mutual Life Ins.*, 512 F.2d 507**
  (6th Cir. 1975)................................................ 27

# TABLE OF AUTHORITIES (Continued)

Page

**Cases** (Continued)

*Metropolitan Life Ins. Co. v. Sullivan*, 96 F.3d 18 (2d Cir. 1996). . . . . . 23, 24, 25

*Miller v. United Welfare Fund*, 72 F.3d 1066 (2d Cir. 1995). . . . . . . . . . . . . . 18

*Muller v. First Unum Life Ins. Co.*, 341 F.3d 119 (2d Cir. 2003). . . . . . . . . . . 19

*Nagele v. Electronic Data Sys. Corp.*, 193 F.R.D. 94
(W.D.N.Y. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc.*,
37 F.3d 55 (2d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Phoenix Mutual Life Insurance Co. v. Adams*, 30 F.3d 554
(4th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 26

*Ramsteck v. Aetna Life Insurance Co.*, 2009 U.S. Dist.
LEXIS 53541 (E.D.N.Y.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Reich v. Valley Nat'l Bank of Arizona*, 837 F. Supp. 1259
(S.D.N.Y. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

*Rice v. Rochester Laborers' Annuity Fund*, 888 F. Supp. 494
(W. D. N. Y. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Rudolph v. Joint Indus. Bd. of the Elec. Indus.*, 137 F. Supp. 2d 291
(S.D.N.Y. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Salisbury v. Brisbane*, 61 N.Y. 617 (N.Y. App. 1874). . . . . . . . . . . . . . . . . . 28

*Sanford v. Sanford*, 749 So.2d 353 (Miss. App. 1999). . . . . . . . . . . . . . . . 4, 25

*Sanford v. TIAA-CREF Individual and Institutional
Services, LLC, et al.*, 2014 U.S.Dist. LEXIS 43878
(March 31, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*S. M. v. Oxford Health Plans (NY), Inc.*, 2014 U.S. Dist.
LEXIS 45630, 9-12 (S.D.N.Y. April 1, 2014). . . . . . . . . . . . . . . . . . . . . . 20

*S.S. Trade Ass'n Int'l Longshoremen's Ass'n v. Bowman*, 247 F.3d 181
(4th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Unicare Life & Health Ins. Co. v. Craig*, 157 Fed. Appx. 787
(6th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). . . . . . . . . . . . . . . . . . 35

*Weber v. Burman*, 22 Misc. 3d 1104(A), (N.Y. Sup. Ct. 2008). . . . . . . . . . . . 21

**Statutes**

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**TABLE OF AUTHORITIES** (Continued)

**Statutes** (continued)                                                    Page

28 U.S.C. § 1332. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1367(c)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

29 U.S.C. § 502(a)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 U.S.C. § 1132(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

McKinney's General Obligation Law, § 5-1504. . . . . . . . . . . . . . . . . . 22, 23, 31

**Regulations**

29 CFR 2520.104b-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

29 CFR 2560.503-1 (b)2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

29 CFR 2560.504-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

# I.    JURISDICTIONAL STATEMENT

Jurisdiction in this case is based upon a federal question, 28 U.S.C. § 1331, arising under 29 U.S.C. § 1132(a)(3), commonly known as ERISA.  The complaint states ancillary state-court claims against Gerd Schneider and Georgia Schneider ("the Schneiders") under 28 U.S.C. § 1332.

Following a memorandum decision and order granting summary judgment to the defendant, TIAA-CREF Individual and Institutional Services, LLC ("TIAA"), entered by United States District Judge Mae A. D'Agostino a Final Judgment was entered on March 31, 2014.  A739.  A timely notice of appeal was filed by William F. Sanford ("Sanford") on April 29, 2014, creating jurisdiction in this Court.  28 U.S.C. § 1291.

# II.    STATEMENT OF THE ISSUES

A.    When an ERISA plan uses the phrases "satisfactory" to the administrator and "acceptable" to the administrator, are the terms ambiguous requiring a *de novo* standard of review under *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101 (1988)?

B.    Does the factual and legal complexity of underlying issues affect the standard of review to be applied by the Court in ERISA cases?

C.    Regardless of the reviewing standard, is good cause established for a reviewing Court to consider medical records outside the ERISA

administrative record when such records are highly probative of critical issues?

D.    Does this Court follow a strict scrutiny or substantial compliance standard when it reviews changes of beneficiary in ERISA plans?

E.    If applicable, has substantial compliance been met when intent to change beneficiaries is unclear and the participant has not taken direct action to change the beneficiary?

F.    Does the ERISA Plan being construed prohibit changes of beneficiary by an attorney-in-fact as a matter of law?

G.    Does a power of attorney issued jointly to two agents require every material change, including marginal notations, to be undertaken jointly?

H.    When the medical records of Gerlinde Sanford are considered, is the power of attorney in this case void for lack of capacity to create agency?

I.    Does failure to gather necessary facts, issue a proper denial letter, and comply with other Plan procedures make TIAA's decision arbitrary and capricious?

J.    When TIAA declined to investigate a legally suspicious change of beneficiary for undue influence, did it act without substantial evidence?

K.    Should the Court reinstate ancillary jurisdiction to state-court claims?

## III.   STATEMENT OF THE CASE

### A.    PROCEDURAL HISTORY

This case was originally filed in the Chancery Court of Lamar County, MS, on April 27, 2011.  TIAA removed the case to United States District Court for the Southern District of Mississippi.  The District Court dismissed the complaint based on ERISA preemption of all claims but granted leave to amend.  In an amended complaint, the plaintiff, William F. Sanford, individually, and as Executor of the Estate of Gerlinde Ulm Sanford, Deceased, ("Gerlinde Sanford") filed a claim under ERISA, 29 U.S.C. § 502(a)(1)(B), against TIAA claiming benefits under a retirement Plan vested in his wife, Gerlinde Sanford.  The Amended Complaint also joined Gerd and Georgia Schneider as individual defendants, alleging pendant state-court claims. On a motion by the Schneiders the Court found that it lacked personal jurisdiction over the Schneiders, but granted Sanford's request to transfer to the Northern District of New York.

After transfer, TIAA and Sanford filed cross-motions for Summary Judgment and the District Court granted the motion of TIAA and denied the motion of Sanford. The Schneiders filed a Motion to Dismiss which the Court granted without prejudice declining further exercise of ancillary jurisdiction.  The Court also denied Sanford's Motion to Admit Additional Evidence into the Record and for Discovery.

Sanford requests the Court to reverse the decision of the District Court granting Summary Judgment to defendant TIAA.  A714, *Sanford v. TIAA-CREF Individual and Institutional Services, LLC, et al*., 2014 U.S.Dist. LEXIS 43878 (March 31, 2014).  The standard of review for the decision made by the District Court is *de novo*. *Juliano v. H. M. O. of New Jersey*, 221 F. 3d 279, 285 (2nd Cir.  2000).

## B.    STATEMENT OF FACTS

William F. Sanford  and Gerlinde Sanford were married from 1967 until her death on April 27, 2010. William F. Sanford was granted a divorce, but on appeal by *Gerlinde Sanford*, the Mississippi Supreme Court overturned the Order and the couple remained married.  *See*, *Sanford v. Sanford*, 749 So.2d 353 (Miss. App. 1999). Sanford was named his wife's executor by Gerlinde Sanford's Will, which is now in probate in Mississippi (A697), where the couple owned joint property.

Gerlinde Sanford worked as a language professor for Syracuse University and participated in two ERISA-qualified retirement Plans. The ERISA Plans lodge administrative responsibility in the "Administrative Benefits Committee" and allow delegation of power to administer the Plan.  A62, A120.  TIAA issues annuities to Plan participants at Syracuse University and provides the investment accounts into which contributions are deposited by qualified employees.  A28, A83.  TIAA maintains and administers two Plans for these accounts.  A31-A49, A86-A109.

At enrollment, Gerlinde designated her husband as the sole primary beneficiary on both accounts.  A211-A212, A298. The two Plans contain distinct provisions for beneficiary designation. The annuity Plan provides that a change of beneficiary may be made "in form and wording *satisfactory* to [TIAA]."  A258.  The investment Plan provides that "[e]ach participant may designate one or more Beneficiaries and contingent Beneficiaries in the manner *acceptable* to TIAA-CREF." A45, A101. (Emphasis added)

In April and July 2008, Gerlinde Sanford met with Michael Graves a financial advisor for TIAA.  An undated, unsigned note about the two meetings Gerlinde Sanford attended, states in pertinent part:

> We discussed that her primary beneficiary was her husband.  She expressed the wish to change her beneficiary, but didn't want to confront him (no explanation why).

> After the meeting, I instructed my Client Relationship Manager, Patrick Fisher, to send beneficiary change forms to Ms. Sanford.

> We scheduled a meeting, but she called on July 23rd, 2009 to cancel the meeting.  I sent her an Annual Review Decline letter.

> I had no further communication with Ms. Sanford.

A300.

According to her medical records[1] Gerlinde Sanford had been diagnosed with cancer in July 2007, nine months before her meeting with Graves. She chose not to treat her disease (A700) and kept working.  In January of 2010, Gerlinde Sanford presented at the emergency room with seizures and had an MRI revealing right skull metastasis with dural involvement and metastasis to her liver.  A700-A701.

On April 22, 2010, Gerlinde Sanford was admitted to Crouse Hospital in Syracuse, NY, for what became her last illness. At that time she had complaints of extreme weakness and pain.  A700.  On April 23 she could not sign a Medicare form because she was too sick to do so.  A702.  She began taking oxycodone and Ativan. A711.  The care coordinator's assessment indicated that Gerlinde needed  hospice care.  A704.  By April 25, the patient was "unable to lift her own arm."  She was deteriorating and had profound weakness.  A706.

On April 26, she was seen by her physician who noted that the patient was in "denial" and believed she could care for herself at home.  A707.  She was confused, on tranquilizers, narcotics, and anesthetics and in a great deal of pain and discomfort. She had very limited sensibility except  to deep pain stimuli.  She was placed on a morphine pump.  A709-A711.

---

[1]The District Court found that it could review the medical records (A717, fn 4) submitted by plaintiff which were not in the administrative record even though her decision did not substantively consider the records for the reasons stated in her opinion.  Plaintiff contends that good cause was established to consider the records and has briefed that issue at p. 19-21, below.

On this day, April 26[2], in this medical condition, Gerlinde Sanford scrawled her name almost illegibly on the New York Power of Attorney ("POA").  A342.  Under the section for designations of agents, the POA states: "I, Gerlinde G. [sic] Sanford . . ., hereby appoint: Gerd K. Schneider AND Georgia A. Schneider . . ., as my agents."  The form then provides: "If you designate more than one agent above, they must act together unless you initial the statement below."  A339.  *No initials appear.* The POA designated the Schneiders as her joint attorneys-in-fact.

On April 27, at 8:10 AM, Gerd Schneider told the nurse to call him when Gerlinde Sanford died.  A712.  At an unknown location, the Schneiders executed a Change of Beneficiary form ("COB") signing page 3 as agents for Gerlinde Ulm Sanford.  A359-A366.   On page two the COB identifies as primary beneficiaries William F. Sanford, spouse, 50% and Helga Meiler, sibling, 16 2/3% in the designated space for percentages.  On a supplement page Edith Kostler and Wolfgang Ulm are listed as primary beneficiaries, siblings, and allotted 16 2/3%. Gertrude Hildebrand is identified as a **contingent** beneficiary, sibling, and allotted 12.5% in the designated area.  At an unknown time, each 16 2/3 % has  been struck through and "12.5%" has been written in the margin with one set of  initials, "GKS."  A361, A362.

---

[2]The document bears a stamp "TIAA-CREF Syracuse, New York 2010 Apr **24** A 9:38" (A371), two days before it was notarized, indicating it had been pre-stamped by TIAA.

TIAA stamped 9:42 AM on the COB.    Gerlinde Sanford died on April 27 at 1:30 PM, 3 hours, 41 minutes after the COB stamp.  A360.  When viewed through the lends of the pre-stamped POA (*see*, fn 2, p. 7), the timing on this document also becomes suspicious.

On May 7, 2010, TIAA sent a letter rejecting the deathbed COB on the grounds that the "allocations for [her] primary and contingent beneficiary(ies) do not equal 100%," (A409), and stating that "[t]he beneficiary designation we currently have on file will remain in effect until we receive the requested information."  *Id*.

On May 8, a TIAA employee received a call made on behalf of the Schneiders concerning the COB.  Maria McCluskey initiated a review to "verify the intent" of the change.  A393.  A determination was made to "reach out" to Stacy Martinez, wealth management advisor for the Schneiders who handled the COB, to determine intent.  A394.  Robert Dockrill sent Martinez an email on May 8 (A395), but there is no record of a reply.  Instead, on May 11 one "harrisg", (A396) documented communication with Michael Graves  and noted:

> Per Michael Grave, [sic] wealth management adviser for Gerlinde Sanford, the participant POA *did a beneficiary change in his presents* [sic].  Per Michael the money was to be divided as follows: spouse 50% and Helga, Edith, Wolfgang and Gertrude, who are all to receive 12.5%.  Gertrude is listed as a contingent, *was really suppose to be a primary*, and was to get a 12.5%.  This all equals 100%.  Please process accordingly. A396.  (Emphasis added)

Page 8

Thus, following a call to Michael Graves eliciting his opinion on intent, a determination to find the April 27 deathbed COB "*acceptable*" had been made by Maria McCluskey, a Service Coordinator. Without communication with the Schneiders or Martinez or review by the legal department, this decision violated TIAA's claim manual.

TIAA maintains an adverse claims procedures manual. A591-A606. Claims related to "competence at execution of Beneficiary Designation/change or election and change of beneficiary after death," are covered. The manual directs: "[T]he Attorney will review the file and provide direction to the Adverse Claims Specialist on the best course of action. This may include corresponding with the claimants and/or their attorneys via telephone and letter or, the adverse claims specialist may be instructed *to obtain additional information* in order to assist our Lawyers in making a decision." A600. (Emphasis added).

Also on May 11, 2010, Warren W. Bader ("Bader") who represented Sanford personally and with regard to his wife's estate, wrote a friendly letter to TIAA, not knowing a change had been made. It requested, "Kindly forward the appropriate claimant's statement to this office . . ., together with a list of options so that we may be in a position to properly advise the decedent's surviving spouse." A397. No response was sent.

Page 9

On July 2, Bader, who had apparently been apprised the deathbed COB was being accepted, wrote to TIAA (A482), asserting that: (1) the surviving spouse was the beneficiary to all of the accounts; (2) the beneficiary change happened after the death of Gerlinde Sanford; (3)The POA was signed only one day before death; and, (4) TIAA had previously denied the change. This letter eventually brought the COB to the legal department's attention.

In an email[3] dated August 9, Shantanu Alam in the legal department states: "Marie McCluskey's write up for legal determination is dated May 8, and the attorney's letter is dated July 2 and yet we didn't receive it in Law until August 9 and what I got was an incomplete file!!! This has got to stop." A641. An email from George Harrison to the legal department on August 10 explains that: "I consulted with Bene change Service Coordinator . . .. She . . . said it was *acceptable* because it does add up to 100%." He asked: "Did counsel review?" A643. (Emphasis added)

On August 10, Margaret Byrne, attorney in the legal department, investigated further with Michael Graves and determined that he was not even the one who dealt

---

[3]TIAA claimed the legal department emails were subject to attorney client privilege. Originally, TIAA provided only redacted emails. Sanford moved to compel production. The District Court in Mississippi ruled that TIAA's attorneys were acting on behalf of Sanford in a fiduciary role and ordered (Doc 98) production of unredacted emails. As produced the emails are in reverse order and in repetitive strings. A compilation in chronological order without duplication has been provided. A641-A655.

with the POA or the COB – it was Stacey Martinez. She wrote an email which states, "I spoke with the wealth management advisor (Mike Graves) this morning who stated he had little to do with the designation and did not witness it. The AIF is also a participant and her wealth management advisor Stacey Martinez provided the AIF with the forms. Ms. Martinez is on maternity leave . . . he will send us his notes." A642.

When the legal department got the notes, it found that Michael Graves' story had changed dramatically from the story told to "harrisg" where he said the COB was done in his "presents." Graves stated:

> I was **not involved** with the Power of Attorney or the **change in beneficiary forms** before the time of Ms. Sanford's death. The Power of Attorneys are participants with TIAA-CREF. The Power of Attorneys for Ms. Sanford, Gerd (PIN 1471420) & Georgia (PIN 1471415) Schneider, **were working with Stacey Martinez** (formerly Finch) as their wealth advisor. A301. (Emphasis added)

The legal department, on its own, determined that Stacey Martinez needed to be contacted because she dealt with the POA. A644. No notes concerning her input appear in the file. Also, the legal department determined that Syracuse University should be contacted (A641, *see also*, A495) but no record of contact appears.

On August 19, 2010, in a letter to Byrne, and Bader addresses the issues of whether the beneficiary designation added up to 100%, whether the beneficiary designation was made after the decedent's death, and referred to the Schneiders as

"alleged agents" raising the issue of their authority. He alluded to future litigation. A650-A651. Also on August 19, TIAA received claim forms from Sanford (A584-A590), which made a formal claim.

On August 26, 2010, Bader and Margaret Byrne spoke by phone. A653. Bader raised the capacity issue by expressing concern over execution of the POA at the hospital at a time when "the deceased had difficulty moving her arm and had some days earlier been confused." *Id*. Bader also requested a copy of the ETS Plan (A654), which was never sent.

On September 28 and September 30, both Kohlrus and Byrne, respectively, (A567, A569) sent nearly identical denial letters, each stating: "in the absence of documentation to the contrary, we must conclude that the materials received from Ms. Sanford's power of attorneys reflect her intent. At this time we must move forward to pay the beneficiaries of record their entitlements to these accounts in accordance with the change of beneficiary request received on April 27, 2010." The siblings were paid and Sanford lost $822,965.13. A607.

## IV.    SUMMARY OF THE ARGUMENT

    A.    TIAA failed to show that the Plan unambiguously granted it discretion to decide issues related to change of beneficiaries and thus is subject to

*de novo* review.  *Kinstler v. First Reliance Standard Life Ins.*, 181 F.3d 243 (2d Cir. 1999).  The District Court applied an incorrect test.

B.    The District Court erred in failing to consider the medical records of Gerlinde Sanford as additions to the record.  Good cause is established when there are violations of Plan procedure and the records are essential for the "full and fair" review essential to meet ERISA and due process.

C.    The Plan requires a *participant* to make a COB.  Change by a POA is legally defective.   Strict scrutiny is required under Sixth Circuit precedent.  Substantial compliance cannot be met when intent to change is unclear and the participant has not done all they could to effectuate the change of beneficiary.

D.    The COB is ineffective because material changes were made by one of two joint attorneys-in-fact.  The Plan and the law require all action to be taken jointly.

E.    The POA is void because the principal, Gerlinde Sanford, lacked mental capacity to empower the Schneiders as her agents.

F.    Medical evidence of incapacity of the principal shifts the burden of proof to the agent to prove that capacity existed.  Adequate proof was never submitted.  TIAA's decision was arbitrary and capricious.

G.    TIAA failed to follow the Plan's denial of claim procedure.  After Sanford's claim was submitted, TIAA owed him a fiduciary duty to ask for specific evidence necessary to assess the claim.  It cannot rely on inaction of Sanford's counsel. If the claim is denied, TIAA must state its reason for denial and allow a full and fair review and appeal.  A failure to follow the claims process makes TIAA's decision arbitrary and capricious.

# V.    ARGUMENT

## A.    The District Court erred by failing to apply a *de novo* standard of review.

The standard of review, as stated by the Supreme Court is presumptively *de novo* review.  [A] denial of benefits challenged under [ERISA § 502(a)(1)(B)] is to be reviewed under a *de novo* standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "If the insurer establishes that it has such discretion, the benefits decision is reviewed under the arbitrary and capricious standard." *Krauss  v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008) (citing *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002)).  "Ambiguities are construed in favor of the Plan beneficiary." *Id.* (citation omitted)

Construing language practically identical to the annuity Plan in this case, *Kinstler v. First Reliance Standard Life Ins.*, 181 F.3d 243 (2d Cir. 1999), found that the phrase "satisfactory proof . . to us [the fiduciary]" was an "inadequate way to convey the idea that the Plan administrator has discretion." *Id.* at 252. The court found that "it is not clear whether the key language, requiring the claimant to 'submit [ ] satisfactory proof . . . to us,' means only that the claimant must submit to [the Administrator] proof that is satisfactory or that the claimant must submit proof that is satisfactory to [the Administrator]." *Id.* at 251-52. The Court continues: "In our Circuit we have recognized that 'magic' words such as 'discretion' and 'deference' may not be 'absolutely necessary' to avoid a [*de novo*] standard of review." *Citations omitted.* At the same time, we have noted that the use of such words "is certainly helpful in deciding the issue." When we have deemed the arbitrary and capricious standard applicable, the policy language reserving discretion has been clear." *Kinstler*, 181 F.3d at 251. Since the Plan administrator bears the burden of providing that the arbitrary and capricious standard applies, the court held that "this needless ambiguity in the wording of the policy should be resolved against [the Administrator]." *Kinstler,* at 252.

The District Court rejected Sanford's reliance on *Kinstler* and relied on the *Krauss* decision which states: "In general, language that establishes an objective

standard does not reserve discretion, while language that establishes a subjective standard does." *Krauss*, 517 F.3d 614 at 622 (2nd Cir. 2008). Focusing solely on the phrase in one Plan, "manner acceptable to TIAA-CREF," the Court erroneously held the change of beneficiary language "unambiguously established a subjective standard." A727.

First, "acceptable" is not an inherently subjective word. It could be acceptable under a known standard or acceptable subjectively based on a whim. There is no principled difference between the word acceptable and the word satisfaction, as construed in *Kinstler*. If one substitutes "satisfactory" for "acceptable" in the Plan the meaning of the phrase is no different.

Second, neither *Kinstler* nor *Krauss* adopts a "subjective versus objective "test" for determining discretion under the language of the Plans. The standard in both cases is whether the Plan unambiguously reserves discretion. This Circuit has made plain a strong preference for express reservations of discretion which the language in this Plan does not use. TIAA has the burden of proving the reservation of discretion. In the absence of such express language, ambiguity requires *de novo* review. Further, the District Court focused on the "acceptable" phrase without adequately considering that TIAA's Plans have two different definitions. The "satisfactory to us" language in the annuity Plan is almost identical to the phrase this

Page 16

Court construed in *Kinstler*, and found to be ambiguous, requiring *de novo* review.

 If "acceptable" is "unambiguously subjective," it only serves to create conflict and ambiguity when compared to the satisfactory language in the other Plan which this Court has already held to require *de novo* review.  "Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire . . . agreement."  *O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc.*, 37 F.3d 55, 59 (2d Cir. 1994) (internal quotation marks and citations omitted).  Ambiguous language in an ERISA plan is construed in favor of the beneficiary.  *Id.*

Thus the District Court overemphasized its perception of the subjective nature of the word "acceptable" without using the correct test and without dealing with the Plan's conflicting language of the Plans which this Court held to require *de novo* review.  TIAA failed to meet its burden to show discretion under the Plan and the issues in this case should be reviewed *de novo*.

Finally, the Court distinguishes *Kinstler* by noting that it involved "a complex factual determination that the participant was not totally disabled," while this case "involves TIAA's acceptance of a participant's change of beneficiary form."  Sanford has located no precedent for using factual complexity of the case as a factor for the standard of review.  This seems to create classes of ERISA plans (complex/simple)

and is not supported by other law.  Moreover, this distinction fails to adequately consider issues regarding the POA and COB which involve fact-specific analysis of intent, and medical determinations of capacity.  *See*, *Krishna v. Colgate Palmotive Co.*, 7 F.3d 11, 20 (2nd Cir. 1993) (commenting on fact complexity in issues of intent, good faith and subjective feelings in the context of undue influence in an ERISA setting.)  TIAA's wilful ignorance or negligence in developing the facts related to these issues does not mean these issues are not complex.  To isolate review to one form would be clear error. Lack of complexity is no reason to reject *de novo* review.

## B.    The District Court erred in failing to admit and consider Gerlinde Sanford's medical records.

The Court determined that  the medical records could not be admitted under an arbitrary and capricious standard, *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995), and that it would not substantively rely on the facts established in the medical records.  A717, fn 4.  If, however, this Court reverses and holds that a *de novo* review applies, there is far more flexibility to consider the medical records upon a showing of good cause.

The Court held, however, that even if a *de novo* review applied, it would not consider the medical records because Sanford had not met the burden of establishing "good cause" to go outside the record, noting that Sanford had not attempted to establish that TIAA had a conflict of interest.  A729, citing, *DeFelice v. American*

*International Life Ins. Co.*, 112 F.3d 61, 66 (2d Cir. 1997); *see also Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003) (citation omitted).

However, the Court failed to address other grounds for establishing good cause.

Good cause to consider extrinsic evidence may be found when the administrator operates under a demonstrated conflict of interest *or employs flawed procedures* in arriving at claim determinations. *Biomed*, 831 F. Supp. 2d at 658-59 (among other considerations, insurer's "decision to twice reverse its position with respect to the Patient's benefits" supported good cause to consider evidence beyond record). "Permissible inquiries that fall outside the bounds of the administrative record can include, but are not limited to, 'the criteria of review by the administrator; . . . the factual basis for the defendant's decision regarding benefits; . . . **the competent and complete evaluation of medical records**; . . . and the physician's report and testimony, when, of course, good cause is demonstrated." *Ramsteck v. Aetna Life Insurance Co.*, 2009 U.S. Dist. LEXIS 53541, at 8 (E.D.N.Y.). (Citations omitted) (Emphasis added)

Sanford argued that substantive consideration of the medical records was essential for understanding the claim, and that there had been a violation of the Plan's claim procedure which foreclosed Sanford's opportunity to submit the medical records after denial of the claim and additional clarification on the issue of intent. (This argument is made again below. *See*, p. 29-35 of this Brief.) Without considering this argument, the District Court found that "the power of attorney form clearly stated Ms. Sanford's intent, which is supported by the fact that, in 2008, Ms. Sanford met with her TIAA Wealth Management Advisor Michael Graves where they discussed, among other things, changing the beneficiaries on her accounts." A730.

In effect, the District Court declines to consider Gerlinde Sanford's mental state when the POA was executed because a third party's notes of a two-year-old meeting "clearly" establish her deathbed state of mind and mental status.

The District Court overstates the probative value of the unsigned statement from two years before death. Graves' statement contains as much evidence of Gerlinde Sanford's intent <u>not</u> to change the beneficiary as it does to change it.

The District Court also relies on the fact that Bader never submitted the records.[4] This misapplies the Plan provisions and ERISA regulations.

The District Court's decision to exclude admissibility of the medical records was clear error because its conclusory determination of intent is not supported by substantial evidence. Refusal to consider plainly relevant medical records ignores highly probative substantial evidence. While the District Court declined

---

[4]Alternatively, Sanford contended that even if the medical records do not establish good cause *per se*, discovery should be allowed because "there is a "reasonable chance that the discovery sought will satisfy the good cause requirement."

*S. M. v. Oxford Health Plans (NY), Inc*., 2014 U.S. Dist. LEXIS 45630, 9-12 (S.D.N.Y. Apr. 1, 2014), decided after the District Court's ruling, holds that: "[P]arties seeking discovery 'need not make a full good cause showing.' (Citations omitted). The party seeking discovery must instead show that the requested discovery is **'reasonably likely' to 'satisfy the good cause** requirement.'" (Emphasis added) (Citations omitted) *Also see*, *Nagele v. Electronic Data Sys. Corp.*, 193 F.R.D. 94, 104 (W.D.N.Y. 2000). (Even when the arbitrary and capricious review is made, the standard "requires courts to scrutinize, although deferentially, decisions by plan fiduciaries for lack of reasonableness, including the absence of substantial evidence, such deficiencies in the administrative review function can be significantly illuminated through the reasonable exercise of standard discovery devices available in federal civil practice.") If the District Court is not convinced that the medical records are admissible as a matter of law, then discovery should be ordered.

consideration of the medical records, doing so works a forfeiture on Sanford. ERISA is supposed to be an efficient means to substantial justice. It was never supposed be a "hide the ball" game about documenting a file. *See*, *Juliano v. The Health Maintenance Organization of New Jersey, Inc., dba U.S. Healthcare*, 221 F.3d 279 (2d Cir. 2000).

**C.    TIAA's decision to deny Sanford's claim should be reversed because it is erroneous as a matter of law.**

1.    The POA was legally defective because Gerlinde Sanford lacked mental capacity to sign it.

Even when *de novo* review is not utilized, this Court can reverse a decision when it is erroneous as a matter of law. *Gates v. United Health Group Inc.*, 2014 U.S. App. LEXIS 6136, 5-6 (2d Cir. N.Y. Apr. 3, 2014) citing, *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999).

When there is limited federal common law the Courts borrow the law of the forum state, New York. *Weber v. Burman*, 22 Misc. 3d 1104(A), 1104A (N.Y. Sup. Ct. 2008) provides: "[w]here there is medical evidence of mental illness or defect, the burden shifts to the opposing party to prove by clear and convincing evidence that the person executing the document in question possessed the requisite mental capacity" (citations omitted). *See also, Matter of Berg*, 23 Misc. 3d 1127(A), 1127A (N.Y. Sup. Ct. 2009).

The medical records, when properly considered, show that Gerlinde was taking pyschotrophic drugs and extremely heavy narcotic pain medications. She was delusional about her chances of recovery, confused, weak and dying. Her cancer had brain dural metastasis which can involve symptoms of seizures, confusion, and depressed level of consciousness. Given this medical situation and in the absence of clear and convincing proof of Gerlinde's capacity, TIAA and the District Court should have found that Gerlinde Sanford was incapacitated.

While the District Court correctly points out that the New York statute short-form powers of attorney, McKinney's General Obligation Law, § 5-1504, TIAA-CREF does not say when a POA <u>must</u> be rejected. However, examination of when the POA <u>may</u> be rejected is helpful in determining when TIAA should have been on alert for irregularities and required further investigation. Perhaps this is one reason TIAA's policies require lawyers to make the decision. The statute says the TIAA may reject the POA when it has "actual knowledge or a reasonable basis for believing that the principal was incapacitated at the time the power of attorney was executed." (Note the objective standard.) Bader provided information that Gerlinde Sanford had been confused for several days and was so weak she could not move her own arm. A653. This information was enough to place TIAA on notice to investigate further. When the burden shifted, TIAA should have asked the sibling beneficiaries to come

forward with proof that Gerlinde had capacity to appoint the agent.  Once again, TIAA was asleep at the wheel.

A principal's lack of capacity of the principal at the time a POA is given invalidates the POA and the transactions undertaken with it.  McKinney's General Obligation Law, § 5-1504(c).  Sanford contends that the medical evidence establishes a lack of capacity as a matter of law.  Unquestionably, however, the medical evidence establishes that the burden of proof shifted to the proponent of the POA who had the obligation to establish that Gerlinde Sanford <u>had</u> legal capacity.  No such proof exists.

This is a fatal flaw for TIAA.  It cannot rely on a POA of one who is presumptively incapacitated without further proof.  This Court should reverse on this point.  The deathbed COB made by the Schneiders cannot stand if Gerlinde Sanford lacked capacity to empower them.

> 2.    TIAA's acceptance of the COB by a third party power of attorney was erroneous as a matter of law.

The Plan provides that "[e]ach *participant* may designate one or more beneficiaries and contingent Beneficiaries in the manner acceptable to TIAA." (Emphasis added)  The District Court held that neither the Plan nor ERISA prohibits acceptance of the COB made by a POA.

In *Metropolitan Life Ins. Co. v. Sullivan*, 96 F.3d 18 (2d Cir. 1996), this Court applied strict construction of FEGLIA, a statutory scheme similar to ERISA, when

analyzing a provision that stated that the employee should designate "in a signed and witnessed writing received before death in the employing office . . .." The Court held that the clause precluded an attorney-in-fact from submitting a change in beneficiary.

The Plan in this case states that the *participant* must make the COB. The added phrase "in a manner acceptable to TIAA-CREF," found to be critical by the District Court, only addresses *how* a COB can be made, not *who* may execute it. Thus, the participant, Gerlinde Sanford, must make the change of beneficiary and *Metropolitan*, *supra*, federal common law in this Circuit, requires strict compliance and prohibits change by power of attorney.

In the alternative, the District Court applied the substantial compliance doctrine, allowing a change of beneficiary so long as the participant's *intent to change the beneficiaries is clear*. A732 (Emphasis added). The Court recites a two-prong test: "[P]ursuant to federal common law, an insured substantially complies with the change of beneficiary provisions of an ERISA . . . policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy." *Hartford Life Insurance Co. v. Einhorn*, 676 F. Supp. 2d 116, 136 (E.D.N.Y. 2009) (quoting *Phoenix Mutual Life Insurance Co. v. Adams*, 30 F.3d 554, 564 (4th Cir. 1994)).

Page 24

The District Court cites no Second Circuit authority for this "well-established" principle of substantial compliance. In fact, the Circuits are split on this issue of substantial compliance. *Unicare Life & Health Ins. Co. v. Craig*, 157 Fed. Appx. 787, 791 (6th Cir. 2005). Given this Court's ruling in *Metropolitan, supra*, and the split in the Circuits, the better rule is that strict scrutiny, not substantial compliance, applies to the Plan. Applying strict scrutiny, Sanford prevails because the participant, Gerlinde Sanford, never directly made a COB.

But even if substantial compliance is used, Sanford should prevail. The District Court found that Gerlinde Sanford "repeatedly made her intentions clear in this matter." A735-A736. Again, the Court relies on Michael Graves's recollections (referred to by the Court as the report of Graves) of a 2008 meeting "where they discussed, among other things, changing the beneficiaries on her accounts." A736. This "report" is not compelling. It also shows that: (1) she did not want the change because she did not want to confront her husband; (2) she was provided forms that she never returned; (3) Graves twice counseled her to get a divorce, of which she wanted no part[5]; and, (4) she canceled her next meeting with Graves never to discuss change again. Gerlinde Sanford had been diagnosed with cancer a year before the

---

[5]Gerlinde Sanford wrote nine letters to the Court expressing her "strong desire not to be divorced." She described a divorce with no one to belong to as "shattering." *Sanford*, 749 So.2d at 355.

Page 25

Graves meeting and surely would have been motivated then to make the change if she intended to. Intent is not clear and the first prong of the two-part test in *Phoenix Mutual, supra*, has not been met.

On prong two, Courts limit substantial compliance by requiring not only intent, but an overt act to make the change. In *S.S. Trade Ass'n Int'l Longshoremen's Ass'n v. Bowman*, 247 F.3d 181 (4th Cir. 2001), the insured did not attempt to complete the beneficiary form created by the insurer. Clear intent was held not to be enough.

Gerlinde Sanford made no effort to fill out the COB directly, and there is no evidence, extrinsic to the COB itself, made by the Schneiders (then modified by Gerd Schneider), to show that Gerlinde intended to benefit her siblings. Her intent to benefit only Sanford is also shown by her Will. If Gerlinde Sanford wanted to change her beneficiaries, and was in her right mind and physically sound, there is no reason she could not have done it directly rather than with a POA even on her deathbed.[6] The COB is direct and uncomplicated.

The POA is a much more cumbersome form entrusting the Schneiders with her life savings to carry out the two-step process. The COB is direct and uncomplicated. The substantial compliance "rule is not applicable where insured has not done all that

---

[6]There were other motivations for the POA. It was Crouse Hospital that made contact with legal services to get the POA (A704) for admission to hospice. A704. Gerlinde Sanford clearly expressed on April 23 that she wanted no one in the meeting (A704), but when the time came, Gerd Schneider was in the meeting. A705.

he reasonably could to meet the conditions of the policy." *Life Ins. Co. of N. Am. v. Leeson*, 2002 U.S. Dist. LEXIS 18530 (S.D. Ohio 2002), (citing, *Magruder v. Northwestern Mutual Life Ins*., 512 F.2d 507, 509 (6th Cir. 1975)). Substantial compliance does not validate this COB.

### 3. The COB is defective because a material change was made by one person when the POA required joint action.

By the document's unambiguous terms, the POA in this case appoints Gerd *and* Georgia Schneider and requires joint action. The form provides a space to make the POA joint and several which was not used. A339. The District Court made undisputed findings that marginal notes changing the percentages of the beneficiary had been made by strike-through with initials "GKS," Gerd Schneider only. A718. Then, the District Court held that "Plaintiff provides no authority for the principle that handwritten notations must be initialed by both attorneys-in-fact, and the Court is aware of no case imposing such a requirement under New York state or federal common law."

First, no authority is required because the POA's terms control and it is absolutely clear that joint action is required. "Joint Action is required." A339. The POA must be strictly construed. *See, In the Estate of Marriott*, 927 N.Y.S. 269 (N. Y App. 2011) (Court held that an "X" instead of initials, as called for by the statutory short form POA, invalidated its use even though the POA was properly signed). It

would lead to absurd results if joint action were required initially but material modifications could be wrought by only. For instance, in this case the percentage change by Gerd Schneider to the balance in the funds of $1,645,930 caused a loss of $63,094 to three siblings and a gain of $205,741 to the contingent beneficiary. That is material.

These changes, and the fact that one of the siblings is clearly listed as a contingent beneficiary, cannot just be waved away as substantial compliance, saying, "Gertrude was listed as contingent was really supposed to be a primary." A396. Given the contingent listing, the COB makes no sense because the percentages cannot add up to 100%. The first determination made by TIAA is correct and Sanford should remain the 100% beneficiary under the only valid designation made by Gerlinde.

The common law requiring joint action by attorneys-in fact appointed jointly is well settled. "[W]here an authority is conferred on several persons all must join in its execution . . .." *In the Matter of Tumilewicz*, 340 N.Y.S.2d 159 (N.Y. Surr. 1973). "An agency conferred upon several persons by a single act of authorization is joint and must be exercised jointly by all the designated agents. An act done by a less number is void as against the principal." *Egner v. States Realty Company and Others*, 26 N.W.2d 464 (Minn. 1947), *accord*, *Callister v. Graham-Paige Corporation*, 146 F.Supp. 399 (D.C. Del. 1956), *Salisbury v. Brisbane*, 61 N.Y. 617

(N.Y. App. 1874). Following this principal the unilateral action taken by Gerd Schneider is invalid as a matter of law.

**D.    TIAA's decisions did not meet the arbitrary and capricious and substantial evidence tests required by ERISA.**

The District Court reviewed under an arbitrary and capricious standard, relying on *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008) (citing *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002)). While Sanford contends that the proper standard is *de novo*, not arbitrary and capricious, analysis under the arbitrary and capricious standard still requires judgment for Sanford.

1.    TIAA'S failure to follow the Plan's procedure makes its decision arbitrary and capricious.

A plan administrator's failure to follow plan procedure can be grounds for a determination that the underlying decision was arbitrary and capricious. *Cook v. N.Y. Times Co. Group Long Term Disability Plan*, 2004 U.S. Dist. LEXIS 1259 (S. D. N. Y.)

The District Court determined that the "Plaintiff never formally *challenged* the change in beneficiary" (A729) (emphasis added), and does not address the argument that TIAA's decision process violated the Plan provisions. However, it is not a challenge but a claim which must be submitted to invoke the claim process under the Plan and the regulations.

Sanford filed a claim. A 554-560 "[A] claim for benefits is a request for a Plan benefit or benefits made by a claimant in accordance with a Plan's reasonable procedure for filing benefit claims. 29 CFR 2560.503-1 (b)2." The Plan provides only that a *claim* must be made in writing. A66, A124 (emphasis added). Sanford's attorney claimed the entire amount of retirement benefits in his July 2 letter. On August 11, Kohlrus acknowledged that the July 2 letter "seems to be there [sic] way of contesting the amended designation . . . ." A645. Further Kohlrus astutely recognizes: "This seems to have been done behind the husband's back." A645. Sanford himself filed a formal claim on TIAA's form on August 19, 2010. A584.

Once a claim is made, 29 CFR 2520.104b-2 requires the administrator to provide a Summary Plan Description (SPD) to "each beneficiary receiving benefits." The SPD notifies claimants of rights under ERISA, including their right to get a copy of the Plan. A620. There is no record that Bader received the SPD even though he requested it. A654. TIAA argued that it had no duty to provide the SPD because TIAA was not the administrator, but it was certainly acting under delegated power. Otherwise, who made the decision? Had TIAA provided the SPD, Bader would have been alerted to the ongoing ERISA process. His repeated threats of future litigation indicated he was unaware of the ongoing administrative process and his need to further document the insurance file as potentially his client's only chance to submit

proof.  Despite Bader's inaction, TIAA had a fiduciary responsibility to protect Sanford's rights.  So much wasted ink has been spilled for failure to simply communicate.  *See*, *Cook*, 2004 U.S. Dist. Lexis 1259, 56.

The POA and COB were legally suspect.  While, as the District Court points out, the New York's Short-Form POA statute does not <u>require</u> rejection of the POA, its terms allowing rejection provide guidance to any party confronted with a suspect POA.  The statute says a POA may be rejected if the third party has a "reasonable basis for believing that the principal is incapacitated."  McKinney's General Obligation Laws, § 5-1504(3).  Nothing more than the timing, one day before death gives a reasonable basis.  The need to communicate, not to be insular, was paramount. In *Rice v. Rochester Laborers' Annuity Fund*, 888 F. Supp. 494 (W. D. N. Y. 1995), the Court decided that the fund administrator had failed to act prudently under the applicable fiduciary responsibility when faced with issues related to an facially ambiguous claim form.  The fund also mishandled a letter from an attorney for the claimant placing them on notice of possible wrongdoing.  The Court analyzed the situation:

> The Fund's administrator as a fiduciary was required to act in all cases to protect the interest of beneficiaries such as plaintiff.  (Citation omitted) A fiduciary breaches his § 1104 duty to a Plan participant by preventing or interfering with the receipt of benefits to which the participant is entitled. (Citation omitted) Under ERISA, a fiduciary's duties to participants and beneficiaries are "the highest known to law."

Section 1104 of ERISA "is a more stringent version of the prudent person standard than in the common law of trusts." *Reich v. Valley Nat'l Bank of Arizona*, 837 F. Supp. 1259, 1273 (S.D.N.Y. 1993).

\* \* \*

The Fund's administrator failed to act as a prudent administrator should have acted under all the circumstances. ***The Fund's administrator erred in accepting the conflicted request form without question and without further inquiry.*** The administrators as fiduciaries are charged with acting prudently under the circumstances, (citation omitted), and, in my judgment, as a matter of law, the Fund's fiduciaries failed to do so here. *Rice*, 888 F.Supp. at 498. (Emphasis added)

TIAA had a fiduciary obligation that includes the obligation to investigate the facts fully. *See also Rudolph v. Joint Indus. Bd. of the Elec. Indus*., 137 F. Supp. 2d 291, 299 (S.D.N.Y. 2001)(a decision may be arbitrary and capricious for failing to obtain, or to otherwise request from a Plan participant, particular kinds or types of evidence which the claim administrator requires to approve a claim). If TIAA needed medical records or Stacy Martinez's statement, then TIAA should not have made a decision without obtaining that information.   TIAA's approach was to sit back and do nothing, relying on inaction by Bader to deny the claim.  This *modus operandi* now has the imprimatur of the District Court.  But TIAA's reliance on Bader's inaction does not comport with its duty and violates ERISA even under an arbitrary and capricious standard.

2.     Even after a proper denial of the initial claim, Sanford still has administrative due process rights.

Even when TIAA determined that Sanford's initial claim was unsupported, that should not have ended the process. If the claim is to be denied, the claim process requires a proper denial letter and the opportunity to submit additional supporting evidence. The Plan states:

(c) The denial notice shall be written in a manner calculated to be understood by the claimant and shall contain: (i) the *specific reason or reasons for denial* of the claim; (ii) a specific reference to the pertinent Plan provisions upon which the denial is based; (iii) a description of any *additional material or information necessary to perfect the claim*, along with an explanation of why such material or information is necessary; (iv) an explanation of the claim review procedures, in accordance with Paragraphs 10.03 and 10.04; and (v) a statement of the claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination under Paragraph 10.04. A66, A124.

The so-called denial letters sent by Byrne and Kohlrus for TIAA totally fail to meet these requirements. A567, A569. In both letters, the only reason given is "the absence of documentary evidence to the contrary." The letters ignore contrary evidence already in the file, such as Graves's contradictory statements, the facial ambiguity of the forms, the highly questionable timing on her POA and COB within 24 hours of death, and the lack of any expression of intent to change beneficiaries that was not two years old and never acted on. It also ignores the need for additional

information such as  medical records and the statements of Martinez and Syracuse officials.

The letters contained no citation to any provision in the Plan, most notably something saying the COB form was "satisfactory" or "acceptable."  There is no notice of further review or the right to bring suit.  In other words, the letters fail on every point to be a proper denial under the ERISA regulations or the Plan.

Why not write the letter and ask Bader to submit the medical records?  The denial should be part of a communications process that informs the claimant of deficiencies and allows the claimant to submit further evidence to perfect the claim. This communication process through the denial letter is explained by *Booton v Lockheed Medical Benefit Plan*, 110 F.3d 1461 (9th Cir. 1997), which states as follows:

> ERISA plan administrators do not have unbounded discretion. ... In simple English, what this regulation [29 CFR 2560.504-1, recited in the opinion] calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries.  If benefits are denied in whole or in part, the reason for the denial must be stated in reasonably clear language, with specific reference to the Plan provisions that form the basis for the denial; if the Plan administrators believe that more information is needed to make a reasoned decision, they must ask for it. There is nothing extraordinary about this; it's how civilized people communicate with each other regarding important matters.

* * *

> If the Plan is unable to make a rational decision on the basis of the
> materials submitted by the claimant, it must explain what else it needs.
> *Id*. If ERISA plan administrators want to enjoy the deference to which
> they are statutorily entitled, they must comply with these simple,
> common-sense requirements embodied in the regulations and our case
> law. (Emphasis Added) (Cited with approval by, *Juliano v. The Health
> Maintenance Organization of New Jersey, Inc., dba U.S. Healthcare*,
> 221 F.3d 279 (2d Cir. 2000)).

Without this kind of communication and right to review, the decision by TIAA was arbitrary and capricious. Even if TIAA still decided against Sanford, Sanford had administrative appeal rights to a "full and fair review" under the Plan.

The process used by TIAA fails to meet basic standards of due process. "ERISA's procedural regulations "go [] to the core of the purpose of [ERISA's] notice requirements," (citations omitted) and must be enforced such that they retain their effectiveness. *(Citation omitted) Cook v. The New York Times Co. Group Long Term Disability Plan*, 2004 U.S. Dist. LEXIS 1259 (S.D. NY 2004). Therefore, TIAA's flawed decision process which failed to follow either the Regulations or the Plan is arbitrary and capricious.

### E.    Plaintiff's State-Law Claims/the Schneider's Motion to Dismiss

The District Court correctly finds that "if [all] federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)). If the Court remands

this case, the claims against the Schneiders dismissed without prejudice pursuant to

28 U.S.C. § 1367(c)(3) should be reinstated.

## VI.    CONCLUSION

William F. Sanford's requests the Court to enter judgment finding that he is

entitled as a matter of law to the current value of all the retirement funds of his wife,

Gerlinde Sanford, held by TIAA at the time of her death  and to remand the case for

determination of the amount of the judgment and attorney fees and cost due to

Sanford.

In the alternative, Sanford requests the Court to enter judgment remanding the

case to the District Court with instructions to decide the case under a *de novo*

standard, consider necessary medical records, and direct discovery as required to fully

determine the relevant facts and decide Sanford's entitlement to benefits.

Respectfully submitted, this the 31st day of July, 2014.

> **William F. Sanford**, Individually and as Executor of the **Estate of Gerlinde U. Sanford**, Appellant
>
> By: /s/ Robin L. Roberts
>      Robin L. Roberts, Attorney for Appellant

Robin L. Roberts (MB # 5596
Robin L. Roberts, Attorneys at Law, PLLC
P. O. Box 1953
Hattiesburg, MS 39403
(601) 544-0950; (601) 450-5395 (fax)
robin@rablaw.net

## <u>CERTIFICATE OF SERVICE</u>

I, Robin L. Roberts, do hereby certify that I have this day electronically served the foregoing using the Court's ECF System, which sent electronic notification of such filing to all counsel of record.

This the 31st day of July, 2014.

//s// Robin L. Roberts_____

Robin L. Roberts

## CERTIFICATE OF COMPLIANCE
## WITH F.R.A.P. RULES 32(a) (5) AND (6) AND 32(a)(7)(B)

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8591 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Corel WordPerfect Office X5 word processing program in Times New Roman 14-point font.

Submitted this the 31st day of July, 2014.


 /s/ Robin L. Roberts                         
Robin L. Roberts
Attorney for Appellant

Page 38

# ADDENDUM
# Special Appendix

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**WILLIAM F. SANFORD,**
**Individually and as Executor of the Estate**
**of GERLINDE ULM SANFORD, Deceased,**

                            **Plaintiff,**

     **vs.**                                **5:12-CV-1254**
                                           **(MAD/TWD)**

**TIAA-CREF INDIVIDUAL & INSTITUTIONAL**
**SERVICES, LLC, GERD SCHNEIDER, and**
**GEORGIA SCHNEIDER,**

                            **Defendants.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**OFFICE OF ROBIN L. ROBERTS**      **ROBIN L. ROBERTS, ESQ.**
P.O. Box 1953
307 West Pine Street (39401)
Hattiesburg, Mississippi 39403
Attorneys for Plaintiff

**MCPHILLIPS, FITZGERALD LAW FIRM**    **JASON T. BRITT, ESQ.**
288 Glen Street
P.O. Box 299
Glens Falls, New York 12801
Attorneys for Plaintiff

**MACKENZIE, HUGHES LAW FIRM**     **STEPHEN T. HELMER, ESQ.**
101 South Salina Street                   **WILLIAM B. HUNT, ESQ.**
Syracuse, New York 13202
Attorneys for Defendant TIAA-CREF

**BOND, SCHOENECK LAW FIRM**       **KATE I. REID, ESQ.**
One Lincoln Center                     **SUZANNE O. GALBATO, ESQ.**
Syracuse, New York 13202           **SUZANNE M. MESSER, ESQ.**
Attorneys for Defendants Gerd Schneider
and Georgia Schneider

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

This case involves a dispute over the proper beneficiary of a decedent's retirement benefit under the Employment Retirement Income Security Act ("ERISA").

On April 27, 2011, Plaintiffs William F. Sanford, individually and as Executor of the Estate of Gerlinde Ulm Sanford commenced an action against Defendant TIAA-CREF Individual & Institutional Services, LLC ("TIAA-CREF") in the Chancery Court of Lamar County, Mississippi, alleging a variety of state causes of action stemming from the disbursement of the decedent's retirement savings accounts. On May 31, 2011, TIAA-CREF removed the action to the United States District Court for the Southern District of Mississippi, where it moved to dismiss the action.

By Memorandum Opinion and Order dated February 24, 2012, the District Court, Judge Starrett presiding, dismissed the complaint with prejudice on the grounds that all of Plaintiff's claims were preempted by ERISA, and provided Plaintiff ten days to seek leave to file an amended complaint. Plaintiff complied, was granted leave, and filed an amended complaint alleging violations of ERISA against TIAA-CREF and adding Defendants Gerd and Georgia Schneider (the "Schneiders") against whom Plaintiff alleges various common-law causes of action.

The Schneiders, residents of New York, made a pre-answer motion to dismiss on the grounds that the Court lacked personal jurisdiction, prompting Plaintiff to move to change venue to the Northern District of New York. On August 7, 2012, Judge Starrett found that the Court lacked personal jurisdiction over the Schneiders and transferred the case to this Court. *See* Dkt. No. 71.

There are four motions presently before the Court. First, the Schneiders move to dismiss the amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 83, 90, 91. Second, TIAA-CREF moves for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 99, 103, 104, 107. The Schneiders join that motion, arguing that the Court should decline to exercise supplemental jurisdiction if it grants TIAA-CREF's motion for summary judgment. *See* Dkt. No. 103. Third, Plaintiff moves to have certain medical records considered by the Court and for leave to conduct certain discovery. *See* Dkt. Nos. 108, 112, 113, 114. Finally, Plaintiff moves for summary judgment against TIAA-CREF. *See* Dkt. Nos. 120-23, 125-28.[1]


## II. BACKGROUND[2]

### A.    Relevant facts

Plaintiff William F. Sanford is the husband of the deceased, Gerlinde Ulm Sanford, and the executor of her estate. *See* Dkt. No. 56, Administrative Record, hereinafter "R.," at 382. Gerlinde Ulm Sanford was employed by Syracuse University ("SU") and a participant in two SU retirement plans that were managed by TIAA-CREF. *See* R. at 281, 313-316. Both plans are

---

[1] Plaintiff filed both a notice of motion for summary judgment and a notice of cross-motion for summary judgment, relying on the same papers. See Dkt. Nos. 120, 123. The Court considers them as one cross-motion for summary judgment.

[2] Plaintiff failed to file a response to Defendant TIAA-CREF's statement of undisputed facts as required by Local Rule 7.1. As such, the Court accepts as true the factual allegations in TIAA-CREF's statement to the extent that they are supported by the record and not otherwise contested by Plaintiff's own statement of undisputed facts submitted in support of Plaintiff's cross-motion. *See Alzawahra v. Albany Medcal Ctr.*, ___ Fed. Appx. ___, 2013 WL 6284286, *1-*2 (2d Cir. 2013); *see also* Dkt. No. 125.

3

subject to ERISA.  *See* R. at 1-116; *see also Sanford v. TIAA-CREF Individual & Institutional Services, LLC*, No. 2:11-CV-122-KS-MTP, 2012 WL 627994 (S.D. Miss. Feb. 24, 2012).  At the time of enrollment, Gerlinde Ulm Sanford designated her husband, William F. Sanford, as the sole primary beneficiary on both accounts.  *See* R. at 194-95, 281.

William F. Sanford and Gerlinde Ulm Sanford were married in 1967, but had lived apart for many years.  *See* Dkt. No. 41 at ¶ 11; R. at 282.  Despite their physical separation, the parties remained married at the time of decedent's death.  *See* Dkt. No. 41 at ¶ 7.[3]  In 2008, Gerlinde Ulm Sanford met with her TIAA-CREF Wealth Management Advisor Michael Graves where they discussed, among other things, changing the beneficiaries on her accounts.  *See* R. at 382-83 (report of Michael Graves).  The report submitted by Mr. Graves indicates that she requested information about removing her husband as a beneficiary at an April 30, 2008 meeting.  *See id.* Mr. Graves told her that she could reduce his allotment to 50% but could not reduce it further without consent or divorce.  *See id.*  They met again on July 8, 2008 and discussed changing her beneficiaries.  *See id.*

On April 22, 2010, Gerlinde Ulm Sanford was hospitalized with highly metastatic cancer. *See* Dkt. No. 129 at 7.[4]  On April 26, 2010, Gerlinde Ulm Sanford executed a Power of Attorney New York Statutory Short Form "POA", designating Defendants Gerd Schneider and Georgia Schneider as her attorneys-in-fact.  *See* R. at 320-29; *see also* Dkt. No. 129 at 12 (nurse's note of

---

[3] William F. Sanford obtained a divorce in the Chancery Court of Lamar County, State of Mississippi in 1997, which was overturned on appeal.  *See Sanford v. Sanford*, 749 So.2d 353 (Miss. App. 1999).

[4] The parties dispute whether the Court should consider the deceased's medical records. *See* Dkt. Nos. 108, 112.  In the context of a motion for summary judgment, there is no reason that the Court cannot consider the documents.  Whether the Court can rely on the medical records in reviewing TIAA-CREF's decision to accept the change in beneficiaries is discussed below.

April 26, 2010 at 10:00 a.m., stating that Gerd Schneider was meeting with an attorney to obtain a POA). The POA contains a major gifts rider with the following express modification: "This power of attorney specifically authorizes my agents to change the beneficiary named on my TIAA-CREF account." *See* R. at 327. The POA is dated, notarized, and witnessed (by two employees of the hospital) April 26, 2010, but bears a stamp which appears to read: "TIAA-CREF Syracuse, New York 2010 Apr 24 A 9:38." *See* R. at 321.

On April 27, 2010, the Schneiders executed a change of beneficiary form, signing as agents for Gerlinde Ulm Sanford. *See* R. at 336, 342-48. The form appears to be the document drafted by TIAA-CREF for the purpose of changing beneficiaries. *See id.* The form bears a stamp which reads "TIAA-CREF Syracuse, New York 2010 Apr 27 A 9:49." *See* R. at 342. The form lists five beneficiaries: William F. Sanford, Helga Meiler, Edith Kostler, Wolfgang Ulm and Gertrude Hildebrand. *See* R. at 343-44. William F. Sanford is listed as a primary beneficiary, identified as spouse, and allotted 50% of the accounts. *See* R. at 342. Helga Meiler, Edith Kostler, and Wolfgang Ulm are listed as primary beneficiaries, identified as siblings, and each allotted 12.5% of the accounts. *See* R. at 342-43. For each of these three individuals, an allotment of 16.3% of the accounts appears in the proper space, is struck out, and the notation "12.5%" is made in the margin with the initials "GKS." *See id.* Gertrude Hildebrand is listed as a contingent beneficiary, identified as a sibling, and allotted 12.5% of the accounts. *See* R. at 343. Both Gerd and Georgia Schneider signed the form. *See* R. at 345.

Gerlinde Ulm Sanford died on April 27, 2010 at 1:30 PM. *See* R. at 331 (death certificate). On May 7, 2010, TIAA-CREF, apparently unaware of the decedent's passing, sent her a letter rejecting the change in beneficiaries on the grounds that the "allocations for [her] primary and contingent beneficiary(ies) do not equal 100%." See R. at 391. The letter also stated

that "[t]he beneficiary designation we currently have on file will remain in effect until we receive the requested information." *See id.* On May 8, 2010, TIAA-CREF reversed its decision and a "legal review" was undertaken to see whether the designation showed the intent to distribute 50% to William Sanford and 12.5% each to the four siblings. *See* R. at 447, 449-50. TIAA-CREF also sent notices to the decedent dated May 10, 2011 stating that Gerd and Georgia Schneider had been designated as "authorized part[ies]" on her TIAA-CREF accounts with "full power of attorney/fiduciary rights." *See* R. at 396-97.

By letter dated May 11, 2010, Plaintiff's then counsel Warren Bader wrote to TIAA-CREF, enclosing the death certificate and requesting as follows: "Kindly forward the appropriate claimant's statement to this office to the attention of the undersigned, together with a list of options so that we may be in a position to properly advise the decedent's surviving spouse." *See* R. at 379. On May 19, 2010, TIAA-CREF responded to this letter stating that it could only release information to the designated beneficiaries. *See* R. at 461. This was apparently a form letter sent on the mistaken belief that Mr. Bader represented only the decedent's estate. *See* R. at 480 (e-mail from Matthew Kohlrus sent August 11, 2010).

On June 8, 2010, William Sanford faxed a copy of Letters of Administration to TIAA-CREF employee Matthew Kohlrus. *See* R. at 462-63. Sometime between June 8, 2010 and July 2, 2010, William Sanford spoke to Matthew Kohlrus. Based on Mr. Kohlrus' notes from that conversation, William Sanford expressed concerns about the POA and the designation but was unsure as to whether he would challenge the decision to accept the designation. *See* R. at 480-481. Mr. Kohlrus told Mr. Sanford that any challenge would have to come in writing. *See id.*

On July 2, 2010, William Bader wrote to TIAA-CREF. *See* R. at 464. His letter referenced the May 19, 2010 letter, expressed confusion as to how there was a change in

6

beneficiaries, requested that TIAA-CREF put a hold on the matter, and threatened future litigation. *See id.*

On August 19, 2010, William Bader wrote to Margaret Burns, an attorney in TIAA-CREF's legal department. *See* R. at 504. Mr. Bader's brief letter addresses only the issues of whether the beneficiary designation added up to 100% and whether the beneficiary designation was made after the decedent's death (at which point the POA would have been without effect). *See id.* Mr. Bader again alluded to future litigation.

On August 26, 2010, William Bader and Margaret Burns spoke on the phone about the state of the decedent's accounts. *See* R. at 531. Ms. Burns' notes indicate that Mr. Bader expressed concern about the execution of the POA at the hospital at a time when "the deceased had difficulty moving her arm and had some days earlier been confused." *See id.* Mr. Bader stated that he had to consult with William Sanford to determine whether he would challenge the matter. *See id.*

On September 2, 2010, Margaret Burns e-mailed William Bader, writing: "I am following up on our conversation of 8/26 to see if you have a decision yet on how your client will proceed." *See* R. at 526. Mr. Bader responded by e-mail as follows: "Margaret . . . just got off the phone with the surviving spouse and he wants me to do more 'due diligence' . . . specifically he wants to know whether a certificate of incumbency was file [sic] with TIAA-CREF stating that the P/O/A was in full force and effect? please advise . . . thank you . . . warren." *See id.* (ellipses and quotations in original).

There is no evidence of further communication between the parties. On September 28, 2010, TIAA-CREF sent a letter to William Bader that reads as follows:

> After we received notification of Ms. Sanford's passing and
> a copy of a Letter of Appointment naming her surviving spouse,

William Sanford, as the executor of her estate we have been in
contact with you regarding a possible contest to the beneficiary
designation of her accounts naming individuals other than Mr.
Sanford to 50% of these assets. We initially received notice of a
possible challenge on July 6. After subsequent conversations
between yourself and our legal department this file has remaining
[sic] open since August 19. This time has been afforded to allow
your client a chance to make a claim to the portion of Ms. Sanford's
TIAA-CREF accounts he is not entitled to, as per her most recently
approved beneficiary designation. Please note that in the absence
of documentation to the contrary we must conclude that the
materials received from Ms. Sanford's power of attorneys reflect her
intent. At this time we must move forward to pay the beneficiaries
of record their entitlement to these accounts in accordance with the
change of beneficiary request received on April 27, 2010.

**B.      Relevant provisions**

As discussed, Gerlinde Ulm Sanford was a participant in two SU retirement plans that
were managed by TIAA-CREF. *See* R. at 313-16. One of the retirement plans is a
noncontributory plan (the "Syracuse University TIAA-CREF Noncontributory Retirement Plan").
*See id.* at 3. This plan provides benefits resulting from "contributions made by the University."
*See id.* at 4. The other plan is a voluntary contribution plan (the "Syracuse University TIAA-
CREF Voluntary Tax-Deferred Annuity Plan"). R. at 59. This plan provides benefits resulting
from "contributions made by the University pursuant to salary reduction agreements between the
University and Participants." *See id.* at 62.

TIAA-CREF issues annuities to plan participants and provides the investment accounts
into which contributions to the plans are deposited. *See id.* at 11, 66. TIAA-CREF manages and
maintains the accounts. *See id.* at 14-32, 69-92.

Regarding the designation of beneficiaries, the plans provide the following language:
"Each participant may designate one or more Beneficiaries and contingent Beneficiaries **in the
manner acceptable to TIAA-CREF**." R. at 28, 84 (emphasis added). Similarly, the annuity

8

contracts issued by TIAA-CREF to Ms. Sanford provided that she may change her beneficiaries by providing notice "in form and wording satisfactory to [TIAA-CREF]." *Id.* at 160 (§ 9); *see also id.* at 191 (§ 9).  Moreover the annuity contracts provide that a change in beneficiaries is effective "as of the date the notice was signed, whether or not the Annuitant is living at the time of such receipt [of the notice by TIAA-CREF]." R. at 161, 193.

The plans provide that "[t]he designation of a Beneficiary other than a Spouse (where applicable) shall require spousal consent in accordance with Paragraph 6.02." R. at 28, 84. Paragraph 6.02 of the plans, entitled "Spouse's Rights", provides as follows:

> The Spouse shall be the Participant's Beneficiary for 50% of the value of each applicable Investment Account, whether or not designated as such, unless one of the following requirements in subparagraphs (a) through (d) below is satisfied.
>
> > (a)    Spouse's Consent to the Beneficiary: The Participant designates a different Beneficiary and the Spouse waives the right to be the Beneficiary in a consent that meets the requirements of subparagraph (e).  In this regard:
> >
> > > (i)    The Participant must designate a specific Beneficiary that cannot be changed without a new spousal consent.
> > >
> > > (ii)    Notwithstanding subparagraph (i) above, the Participant may at any time revoke the designation of a non-spouse Beneficiary and restore the Spouse as Beneficiary, without spousal consent.

*Id.*


## C.    The pending motions

In their motion to dismiss, the Schneiders argue that Plaintiff has failed to plead the necessary elements for both the breach of fiduciary duty and negligence claims.  *See* Dkt. No. 83-

1 at 7. Specifically, they assert that both claims required that Plaintiff plead that the Schneiders owed him a duty, which Plaintiff have failed to do. *See id.* at 7-8. Further, the Schneiders argue that the fraud claim must be dismissed because Plaintiff failed to allege a material misrepresentation of fact, that Plaintiff relied on that misrepresentation, and that such reliance was reasonable. *See id.* at 9-10. Next, the Schneiders contend that Plaintiff's intentional and negligent infliction of emotional distress claims must fail because the complaint is devoid of any allegations of "'outrageous', 'atrocious' or 'intolerable' conduct on the part of the Schneiders" and because there is no allegation that the Schneiders' conduct "unreasonably endangered the plaintiff's physical safety." *Id.* at 12 (citations omitted). Finally, the Schneiders contend that the Court must dismiss Plaintiff's conversion claim because "Plaintiff's allegations regarding the $5,000 check are insufficiently pled" and "Plaintiff's interest in Ms. Sanford's retirement account was contingent and insufficient to support a cause of action for conversion." *Id.* at 13-15.

In its motion for summary judgment, TIAA-CREF argues that the decision to accept Ms. Sanford's change of beneficiary form is entitled to deferential, arbitrary and capricious review. *See* Dkt. No. 99-1 at 11-12. Specifically, they assert that the language in the plans give TIAA-CREF discretion to make determinations regarding beneficiary designations, thereby requiring arbitrary and capricious review. *See id.* at 11. Next, TIAA-CREF argues that the administrative record contains absolutely no evidence that it abused its discretion and, in light of the discretionary standard applicable to this case, Plaintiff may not present evidence outside of the administrative record. *See id.* at 13-14. The Schneiders join TIAA-CREF's motion, asking that the Court decline to exercise supplemental jurisdiction over the claims against them if it grants TIAA-CREF's motion for summary judgment as to the ERISA claims.

On May 14, 2013, Plaintiff filed a "motion to admit additional evidence into the record and for discovery." *See* Dkt. No. 108. Plaintiff seeks to have the Court consider the medical records of Gerlinde Ulm Sanford, which he claims "are essential for a complete adjudication of the rights of the parties on the issues of mental capacity and undue influence of Gerlinde Ulm Sanford in order to enter into a power of attorney." Dkt. No. 108-1 at ¶ 1. Further, Plaintiff seeks "to take additional discovery to develop the facts as it relates to the intent of Gerlinde Ulm Sanford and the proper exercise of fiduciary responsibility in denying the claim of William F. Sanford to the benefits of his wife's retirement plan." *See id.* at ¶ 2.

On October 22, 2013, Plaintiff filed a cross-motion for summary judgment. *See* Dkt. No. 122. In his cross-motion, Plaintiff argues that TIAA-CREF's decision was arbitrary and capricious because it was never decided by the proper authority. *See id.* at 8-11. Further, Plaintiff contends TIAA-CREF's decision was arbitrary and capricious because it did not meet the benefits claims procedure. *See id.* at 11-14.

## III. DISCUSSION

### A. Summary judgment standard

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a

11

motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.      Standard of review of TIAA-CREF's actions**

"[A] denial of benefits challenged under [ERISA § 502(a)(1)(B) ] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "If the insurer establishes that it has such discretion, the benefits decision is reviewed under the arbitrary and capricious standard." *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008) (citing *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002)). "Ambiguities are construed in favor of the plan beneficiary." *Id.* (citation omitted).

> "A reservation of discretion need not actually use the words
> 'discretion' or 'deference' to be effective, but it must be clear.

> Examples of such clear language include authorization to 'resolve
> all disputes and ambiguities,' or make benefits determinations 'in
> our judgment.' In general, language that establishes an objective
> standard does not reserve discretion, while language that establishes
> a subjective standard does."

*Krauss*, 517 F.3d at 622 (quotations omitted).

In this case, TIAA-CREF argues that the Plan documents expressly confer discretion on it
to accept beneficiary designations, thereby requiring the Court to review this matter under the
arbitrary and capricious standard. It relies on the provision providing that "[e]ach participant
may designate one or more Beneficiaries and contingent Beneficiaries in the manner acceptable to
TIAA-CREF." *See* R. at 28, 84. The Court agrees that this provision provides TIAA-CREF with
the discretion to determine what constitutes an acceptable beneficiary designation and that
arbitrary and capricious review is appropriate.

Plaintiff relies on *Kinstler v. First Reliance Standard Life Ins.*, 181 F.3d 243 (2d Cir.
1999), in support of his position. In *Kinstler*, the court found that the phrase "satisfactory proof
of Total Disability to us [the fiduciary]" was an "inadequate way to convey the idea that the plan
administrator has discretion." *Id.* at 252. First, the court found that "it is not clear whether the
key language, requiring the claimant to 'submit [ ] satisfactory proof of Total Disability to us,'
means only that the claimant must submit to First Reliance proof that is satisfactory or that the
claimant must submit proof that is satisfactory to First Reliance." *Id.* at 251-52. Since the plan
administrator bears the burden of providing that the arbitrary and capricious standard applies, the
court held that "this needless ambiguity in the wording of the policy should be resolved against
First Reliance." *Id.* at 252. Further, the court noted that "unless a policy makes it explicit that the
proof must be satisfactory to the decision-maker, the better reading of 'satisfactory proof' is that it
establishes an objective standard, rather than a subjective one." *Id.* (citation omitted). Further,

13

the court found that the phrase "satisfactory proof" or "proof satisfactory to [the decision-maker]" is insufficient to convey the idea that the plan administrator has discretion. *Id.* As such, the court found that "saying that proof must be satisfactory 'to the administrator' merely states the obvious point that the administrator is the decision-maker, at least in the first instance." *Id.*

Unlike the situation in *Kinstler*, in this case, the language authorizing the participants to change beneficiaries "in the manner acceptable to TIAA-CREF" unambiguously establishes a subjective standard. *See Krauss*, 517 F.3d at 622 (finding deferential review proper where the plan authorized the fiduciary to calculate the benefits in the amount the fiduciary "determine[d] to be the reasonable charge"); *Fay v. Oxford Health Plan*, 287 F.3d 96, 103-04 (2d Cir. 2002) (finding deferential review proper where the plan authorized services that were medically necessary, "as determined by" the fiduciary).

Moreover, the Court finds that cases such as *Kinstler*, which involved a fiduciary's denial of benefits to a plan participant based on a complex factual determination that the participant was not "totally disabled," is distinguishable from the present matter, which involves TIAA-CREF's acceptance of a participant's change of beneficiary form. TIAA-CREF has a standard form used to designate beneficiaries, and this form was used in the present case. *See* R. at 342-348.

Based on the foregoing, the Court finds that TIAA-CREF has established that the plans set forth an unambiguously subjective standard providing it with discretion; and, therefore, they are entitled to arbitrary and capricious review.

**C.    Plaintiff's motion to admit additional evidence into the record and for discovery**

The Court first addresses Plaintiff's motion to admit additional evidence into the record and for discovery. The first part of this motion is, in essence, a request that this Court consider

14

the medical records of the decedent in conducting a *de novo* review of TIAA-CREF's acceptance of the beneficiary designation. In light of the Court's determination that the appropriate standard is arbitrary and capricious, the Court cannot rely on the medical records. *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995) ("Because district courts are required to limit their review to the administrative record, it follows that, if upon review a district court concludes that the Trustees' decision was arbitrary and capricious, it must remand to the Trustees with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a 'useless formality'") (citations omitted); *see also Zervos v. Verizon New York, Inc.*, 277 F.3d 635, 646 (2d Cir. 2002).

Plaintiff argues that, "[w]hile most ERISA cases should be decided on the basis of the record developed by the insurance company, in cases where 'circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review' additional evidence should be received." Dkt. No. 108-2 at 1. As TIAA-CREF correctly points out, Plaintiff's argument seeking admission of additional medical evidence overlooks a critical point: this is not a *de novo* review. Dkt. No. 112 at 5. Based upon the above authority, the Court denies Plaintiff's motion insofar as he asks the Court to consider evidence beyond the administrative record.

The subject of expanding the record bears further comment, however, as the Court would still decline to consider the evidence under the de novo standard.

Even where a court reviews a fiduciary's determination *de novo*, the court is confined to the record that was in front of the fiduciary unless the court "finds good cause to consider additional evidence." *DeFelice v. American International Life Ins. Co.*, 112 F.3d 61, 66 (2d Cir. 1997); *see also Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003) (citation omitted).

In this case, Plaintiff has failed to establish that there is good cause to expand the record. The primary thrust of Plaintiff's argument is that the Court should consider the medical records because they are relevant to the issue of the decedent's capacity to execute a POA on April 26, 2010. *See* Dkt. No. 108-2 at 1-2. However, the simple fact that evidence may be relevant to a case cannot, alone, be good cause to consider materials that were not provided to the fiduciary at the time it made its determination. *See, e.g., Locher v. Unum Life Ins. Co.*, 389 F.3d 288, 294-95 (2d Cir. 2004) (holding that good cause can be based on a fiduciary's conflict of interest); *Prabhakar v. Life Ins. Co. of N. America*, No. 09-CV-5530 (PKC), 2013 WL 4458728, *11 (E.D.N.Y. Aug. 16, 2013) (finding good cause to consider the plaintiff's personal copy of the plan documents where it did not contain notice of statute of limitations, but the copy in the administrative record contained such a copy).

In this case, Plaintiff has not even attempted to argue that TIAA-CREF was operating under a conflict of interest. Even assuming, as Plaintiff contends, that the medical records alone establish a lack of capacity, the Court does not find good cause to consider them as the record shows that Plaintiff never submitted the records to TIAA-CREF, despite having possession of them and despite having several months to submit the information prior to TIAA-CREF's decision to pay the sibling beneficiaries. Plaintiff was informed, months before any payment was made, that any challenge to TIAA-CREF's decision or the change in beneficiary would have to be in writing. *See* R. at 480-81. Despite this, Plaintiff never formally challenged the change in beneficiary.

Finally, the Court rejects Plaintiff's argument that discovery should be allowed because "there is a 'reasonable chance that the discovery sought will satisfy the good cause requirement.'" Dkt. No. 108-2 at 2-3. Essentially, Plaintiff argues that the Court should consider evidence

16

outside the administrative record to determine whether the change of beneficiary form actually reflects her intent. *See id.* at 2-3. This argument is flawed. The power of attorney form clearly stated Ms. Sanford's intent, which is supported by the fact that, in 2008, Ms. Sanford met with her TIAA-CREF Wealth Management Advisor Michael Graves where they discussed, among other things, changing the beneficiaries on her accounts. *See* R. at 382-83 (report of Michael Graves). The report submitted by Mr. Graves indicates that she requested information about removing her husband as a beneficiary at an April 30, 2008 meeting. *See id.* Mr. Graves told her that she could reduce his allotment to 50% but could not reduce it further without consent or divorce. *See id.* They met again on July 8, 2008 and discussed changing her beneficiaries. *See id.*

Based on the foregoing, the Court finds that Plaintiff has failed to meet his burden and that permitting discovery in this matter is unwarranted. Thus, even if the Court were to review the case *de novo*, it would decline to consider the medical records or order discovery.


**D.     TIAA-CREF's motion for summary judgment**

The first issue the Court must address is whether TIAA-CREF made a clear legal error in accepting the change in beneficiary, *i.e.*, whether designation of a beneficiary by a third party holding a power of attorney is permissible under the plan documents and ERISA. The Plan provides that "[e]ach participant may designate one or more Beneficiaries and contingent Beneficiaries in the manner acceptable to TIAA-CREF." Notably, it does not require any particular form of notice, such as a writing signed by the participant. *See, e.g., Metropolitan Life Ins. Co. v. Sullivan*, 96 F.3d 18 (2d Cir. 1996) (holding that a clause requiring that change in beneficiary be signed by the policyholder precludes attorney-in-fact from submitting change in beneficiary). Further, ERISA itself does not address the question. *See T.I.A.A.-C.R.E.F. v.*

*Bernardo*, 683 F. Supp. 2d 344, 353 (E.D. Pa. 2010). Thus, the Court finds that TIAA-CREF was not barred from accepting a beneficiary designation made under the authority of a POA, which specifically granted the authority to change the beneficiaries of the plan.

Second, the Court considers whether TIAA-CREF abused its discretion, *i.e.* was arbitrary and capricious, in accepting the designation of decedent's siblings on the basis of the change in beneficiaries form and the POA. Plaintiffs make a number of challenges in their moving papers to the propriety of TIAA-CREF's determination, none of which are supported by the administrative record or evidence submitted by Plaintiffs in support of the instant motions.

First, Plaintiff argues that the plan documents require spousal consent for any designation of a non-spousal beneficiary. *See* Dkt. No 104 at 17. Paragraph 6.01 of each Plan provides that "[t]he designation of a beneficiary other than a spouse (where applicable) shall require spousal consent in accordance with paragraph 6.02." R. at 28, 84. Paragraph 6.02 provides that "[t]he spouse shall be the participant's beneficiary for 50% of the value of each applicable investment account, whether or not designated as such, unless [there is spousal consent]." *See id.* Thus, by the terms of the Plan, spousal consent as referenced in paragraph 6.01 is only required where the designation of a non-spousal beneficiary would result in the spouse receiving less than 50% of the value of the participant's investment accounts.

Second, Plaintiff argues that the power of attorney required the Schneiders to act jointly. Therefore, the fact that only Gerd Schneider's initials appear next to the hand-written changes invalidates the change in beneficiaries. However, Plaintiff provides no authority for the principle that handwritten notations must be initialed by both attorneys-in fact, and the Court is aware of no case imposing such a requirement under New York state or federal common law. As the beneficiary change form was signed by both Gerd and Georgia Schneider, the Court finds that the

Schneiders acted jointly in accordance with the requirements of the power of attorney.

Third, contrary to Plaintiff's argument that the change of beneficiary form was not submitted to TIAA-CREF until nine days after Ms. Sanford's death, the record makes clear that TIAA-CREF received the change of beneficiary form from the Schneiders on April 27, 2010 at 9:49 a.m. *See* R. at 342. Ms. Sanford died later that day, at 1:30 p.m. *Id.* at 331.

Finally, Plaintiff argues that TIAA-CREF accepted the power of attorney in violation of the New York State General Obligation Law "GOL" § 5-1504, which sets forth the circumstances in which a third party must accept a properly executed statutory short form power of attorney. Assuming for the sake of argument that GOL § 5-1504 is applicable in an ERISA action, the Court finds that TIAA-CREF did not violate its terms. By its express terms, the statute simply prohibits a third party from refusing to honor a statutory short form power of attorney without reasonable cause. *See* N.Y. Gen. Obl. Law § 5-1504(1) ("No third party . . . shall refuse, without reasonable cause, to honor a statutory short form power of attorney."). It cannot be read to demand a refusal. Similarly, GOL § 5-1504(5) allows the third-party to request an affidavit from the agent attesting to the validity of the POA. In no way does it impose liability for not so requesting. In short, New York's statutory short form power of attorney statute provides no support for Plaintiffs' position.

Based on the foregoing, the Court finds that TIAA-CREF did not act in an arbitrary and capricious manner; and, therefore, the Court grants TIAA-CREF's motion for summary judgment.

Moreover, under the well-established "substantial compliance" doctrine, courts do not require absolute compliance with ERISA plan requirements in order to approve a change of beneficiaries, so long as the participant's intent to change the beneficiaries is clear. "'[P]ursuant to federal common law, an insured substantially complies with the change of beneficiary provisions

of an ERISA . . . policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy.'" *Hartford Life Insurance Co. v. Einhorn*, 676 F. Supp. 2d 116, 136 (E.D.N.Y. 2009) (quoting *Phoenix Mutual Life Insurance Co. v. Adams*, 30 F.3d 554, 564 (4th Cir. 1994)).

An example of lack of "substantial compliance" is set forth in *Prudential Insurance Company of America v. Schmid*, 337 F. Supp. 2d 325, 330 (D. Mass. 2004). In *Schmid*, the intended beneficiary presented the following evidence of a "substantial compliance" with regard to a beneficiary change. The decedent requested a change of beneficiary form from the carrier as well as information with respect to the named beneficiary. The potential new beneficiary — the second wife — contended that she heard the decedent say, on the phone to the carrier, that he intended to make her the beneficiary. The decedent did receive correspondence from the carrier which erroneously identified Patricia, the second wife as the present beneficiary. In fact, the beneficiary was Jessica, his daughter from his first marriage. The correspondence from the carrier also included a change of beneficiary form with instructions on how to effect the change. However, the decedent died without sending in the change of beneficiary form. Patricia, the second wife and the intended beneficiary, asserted that the decedent intended to change the beneficiary from daughter Jessica to her and was only prevented from doing so by the carrier's error in mistakenly advising him that Patricia was already the designated beneficiary. However, at the decedent's death, daughter Jessica remained the listed beneficiary.

In *Schmid* the court reviewed the applicable ERISA and federal common law, including the primary substantial compliance rule involving (1) intent and (2) the attempt to effectuate change by undertaking positive action. The court ruled that the first element of substantial

compliance; namely, the intent to make a change, was satisfied. However, the court determined that there was insufficient evidence as to the second factor for substantial compliance, in that there were no positive steps made to effectuate the change. *Id.* at 330. The court cited to similar cases where the decedent did not take enough positive steps to effectuate a change. In *American International Life Assurance Co. of New York v. Vazquez*, No. 02 Civ. 141(HB), 2003 WL 548738 (S.D.N.Y. Feb. 25, 2003), the decedent did nothing except express an intent to make an unspecific change and to obtain a change of beneficiary form. In *Aetna Life Ins. Co. v. Weatherford*, 924 F.2d 1057 (6th Cir. 1991), the decedent completed and signed a change of beneficiary form but never mailed it. The completion of the form was held to be merely an "unexecuted intention" and did not meet the standard of substantial compliance.

In *Davis v. Combes*, 294 F.3d 931, 935 (7th Cir. 2002), the named insured attempted to complete a change of beneficiary form in favor of her sister, Linda Davis. The effectiveness of that change of beneficiary form was at issue; especially in view of the fact that the decedent had previously designated her husband as a recipient of 20% and her daughter as a recipient of 80% of the policy. With regard to the policy at issue, the decedent filled out — with her own handwriting — the form provided to her. On that form she provided all the necessary information, including her designation of Linda as the new beneficiary, and September 1, 1996 as the effective date. However, she did not sign and date the form on the line provided for that purpose. This failure to sign and date the form on the line provided appeared to be a technical violation of both the sponsor and the insurance carrier requirements. In fact, the policy provided that a beneficiary designation "will be effective on the date the insured signs it." Ruling that "substance rather than form should be the basis of . . . [such] decisions", the Seventh Circuit ruled that "[w]e see no reason not to apply the substantial compliance notion to this issue[.]" *Id.* at 941. Finding that the

change of beneficiary form substantially complied with the policy, the court held as follows:

> The fact that a policy holder made a careless error should not conclusively determine whether her efforts at naming a beneficiary were effective for purposes of the policy and the statute. Carelessness suggests a lack of attention to detail, but it tells us very little about whether the policy holder formed the necessary intent to name a beneficiary and whether she took sufficient steps consistent with that intent to implement her decision. We are aware that there will be situations in which a failure to sign and date a beneficiary designation may cast significant doubt on whether the policy holder actually decided to go through with the change. But it is equally true that there are other cases in which the evidence will unequivocally establish that the policy holder intended to make the new beneficiary designation and took positive action to effectuate that intent. *Cf. Becker v. Montgomery*, 532 U.S. 757, 121 S. Ct. 1801, 1808, 149 L. Ed. 2d 983 (2001) (holding that failure to sign notice of appeal should not be fatal where "no genuine doubt exists about who is appealing, from what judgment, to which appellate court").

*Davis*, 294 F.3d at 942.

The *Davis* court also cited to an extreme case which vividly demonstrated that intent was an important factor in these substantial compliance decisions. In *Criscuolo v. United States*, 239 F.2d 280 (7th Cir. 1956), a dying soldier in the hospital gave a staff person a note indicating that he wanted to change his beneficiary to make his wife the beneficiary of his policy. The staff person obtained and completed a change of beneficiary form; but the soldier died before he was able to sign or submit the form. The Court found that, although mere intent is not enough, in this unique case, the intent, desire and purpose of the soldier should be given effect by the Courts. Again, the Court ruled that "substance, rather than form should be the basis of . . . [such] decisions." *Id.* at 282.

In the present matter, the Court finds that, even if Ms. Sanford and TIAA-CREF had not strictly complied with the terms of the plans, the substantial compliance doctrine would apply. Ms. Sanford repeatedly made her intentions clear in this matter, and her intentions should be

given effect. The power of attorney form clearly stated Ms. Sanford's intent, which is supported by the fact that, in 2008, Ms. Sanford met with her TIAA-CREF Wealth Management Advisor Michael Graves where they discussed, among other things, changing the beneficiaries on her accounts. *See* R. at 382-83 (report of Michael Graves). The report submitted by Mr. Graves indicates that she requested information about removing her husband as a beneficiary at an April 30, 2008 meeting. *See id.* Mr. Graves told her that she could reduce his allotment to 50% but could not reduce it further without consent or divorce. *See id.* They met again on July 8, 2008 and discussed changing her beneficiaries. *See id.*

Further, Plaintiff was told that any form objection to the change in beneficiaries must be made in writing, several months before any action was taken. In September of 2010, when he failed to make such a written objection, TIAA-CREF carried out Ms. Sanford's wishes, as made clear through her change in beneficiary form. Such actions cannot be considered arbitrary and capricious.

Based on the foregoing, the Court finds that, in the alternative, Ms. Sanford substantially complied with the applicable plan provisions and law; and, therefore, TIAA-CREF did not abuse its discretion. Since the Court has granted TIAA-CREF's motion for summary judgment as to Plaintiff's claims against it, the Court denies Plaintiff's motion for summary judgment as it applies to TIAA-CREF.

### E.   Plaintiff's state-law claims/the Schneider's motion to dismiss

Application of supplemental jurisdiction is discretionary, and "it requires a balancing of the considerations of comity, fairness to the litigants, judicial economy, and the avoidance of needless decisions of state law." *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 809

(2d Cir. 1979) (citation omitted).  The Second Circuit has held that "'if [all] federal claims are dismissed before trial . . . the state claims should be dismissed as well.'"  *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)).

Since the Court has dismissed all of Plaintiff's federal claims, it declines to exercise supplemental jurisdiction over their state-law claims and dismisses them without prejudice pursuant to 28 U.S.C. § 1367(c)(3).  Accordingly, the Schneider's motion to dismiss is denied as moot.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to admit additional evidence into the administrative record and to conduct discovery (Dkt. No. 108) is **DENIED**; and the Court further

**ORDERS** that Defendant TIAA-CREF's motion for summary judgment (Dkt. No. 99) is **GRANTED** and that Plaintiff's cross-motion for summary judgment (Dkt. No. 123) is **DENIED**; and the Court further

**ORDERS** that the Plaintiffs' complaint as against the Defendant TIAA-CREF is **DISMISSED with prejudice**; and the Court further

**ORDERS** that it declines to exercise supplemental jurisdiction over Plaintiff's state-law claims against the Defendants Gerd Schneider and Georgia Schneider and that Plaintiff's state-law claims against Defendants Gerd Schneider and Georgia Schneider are **DISMISSED without prejudice**; and the Court further

**ORDERS** that Defendants Gerd Schneider and Georgia Schneider's motion to dismiss

24

(Dkt. No. 83) is **DENIED as moot**; and the Court further

     **ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

     **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  March 31, 2014
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

### JUDGMENT IN A CIVIL CASE

**WILLIAM F. SANFORD,**
**Individually and as Executor of the Estate**
**of GERLINDE ULM SANFORD, Deceased,**

**Plaintiff,**

**vs.**                                                        **5:12-CV-1254 (MAD/TWD)**

**TIAA-CREF INDIVIDUAL & INSTITUTIONAL**
**SERVICES, LLC, GERD SCHNEIDER, and**
**GEORGIA SCHNEIDER,**

**Defendants**

_____

 __X___ **Decision by Court.**  This action came to trial or hearing before the Court.  The issues
have been tried or heard and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that **ORDERS** that Plaintiff's motion to admit additional evidence into the administrative record and to conduct discovery (Dkt. No. 108) is **DENIED**; and the Court further **ORDERS** that Defendant TIAA-CREF's motion for summary judgment (Dkt. No. 99) is **GRANTED** and that Plaintiff's cross-motion for summary judgment (Dkt. No. 123) is **DENIED**; and the Court further **ORDERS** that the Plaintiffs' complaint as against the Defendant TIAA-CREF is **DISMISSED with prejudice**; and the Court further **ORDERS** that it declines to exercise supplemental jurisdiction over Plaintiff's state-law claims against the Defendants Gerd Schneider and Georgia Schneider and that Plaintiff's state-law claims against Defendants Gerd Schneider and Georgia Schneider are **DISMISSED without prejudice**; and the Court further **ORDERS** that Defendants Gerd Schneider and Georgia Schneider's motion to dismiss (Dkt. No. 83) is **DENIED as moot**; and the Court further **ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules., all of the above pursuant to the Memorandum-Decision and Order of the Honorable Judge Mae A. D'Agostino, dated the 31st day of March, 2014.

DATED: March 31, 2014

Clerk of Court

S/ Britney Norton
_____
Britney Norton, Deputy Clerk