# 14-1496-CV

## UNITED STATES COURT OF APPEALS
## for the
## SECOND CIRCUIT

WILLIAM F. SANFORD, individually and as executor of the
estate of GERLINDE ULM SANFORD, deceased,

*Plaintiff-Appellant*

V.

TIAA-CREF INDIVIDUAL & INSTITUTIONAL SERVICES, LLC,
GERD SCHNEIDER, and GEORGIA SCHNEIDER,

*Defendants-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF OF DEFENDANT-APPELLEE
## TIAA-CREF INDIVIDUAL & INSTITUTIONAL
## SERVICES, LLC

**MACKENZIE HUGHES LLP**
W. Bradley Hunt
101 S. Salina Street, P.O. Box 4967
Syracuse, NY 13221-4967
(315) 474-7571
bhunt@mackenziehughes.com

<u>**CORPORATE DISCLOSURE STATEMENT**</u>

TIAA-CREF Individual & Institutional Services, LLC ("TIAA-CREF")

states as follows:

1. TIAA-CREF is wholly owned by Teacher's Insurance and Annuity

   Association of

   America ("TIAA"), which is a privately-held, not-for-profit corporation.

2. TIAA has no parent corporation.

3. No publicly held corporation or entity owns 10% or more TIAA-CREF.

Dated: October 24, 2014                   **MACKENZIE HUGHES LLP**

By:    */s/* W. Bradley Hunt
          W. Bradley Hunt
          Attorneys for Defendant TIAA-
          CREF Individual &
          Institutional Services, LLC,
          101 S. Salina Street
          P.O. Box 4967
          Syracuse, NY 13221-4967
          (315) 474-7571
          bhunt@mackenziehughes.com

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS ...................................................................................... ii

TABLE OF AUTHORITIES ................................................................................ iv

STATEMENT OF THE ISSUES ...........................................................................1

STATEMENT OF THE CASE................................................................................4

    Procedural History ...........................................................................................4

        A. General Background........................................................................4

        B. The Proceedings in Mississippi......................................................5

        C. Transfer of this Case to the Northern District of New York............6

        D. The Order Being Appealed .............................................................6

    Relevant Facts ..................................................................................................7

        A. The SU/TIAA-CREF Retirement Plans ..........................................7

        B. Ms. Sanford's Initial Beneficiary Designation ...............................9

        C. Ms. Sanford's Longstanding Intention to Change Her
           Beneficiary ......................................................................................9

        D. Ms. Sanford's Reduction of Her Husband's Beneficiary
           Interest to 50%...............................................................................10

        E. TIAA-CREF's Initial, Erroneous Rejection and Subsequent,
           Proper Acceptance of the Change of Beneficiary Form ...............11

F.  Mr. Sanford's Failure to Challenge the Change of
Beneficiary Form................................................................13

G.  TIAA-CREF's Payment of the Sibling Beneficiaries, in
Accordance with Ms. Sanford's Change of Beneficiary Form......15

SUMMARY OF ARGUMENT .........................................................16

ARGUMENT

POINT I     THE DISTRICT COURT PROPERLY REVIEWED TIAA-CREF'S
DECISION TO ACCEPT MS. SANFORD'S CHANGE OF
BENEFICIARY FORM UNDER THE ARBITRARY AND
CAPRICIOUS STANDARD ............................................20

POINT II    THE DISTRICT COURT PROPERLY DECLINED TO CONSIDER
MS. SANFORD'S MEDICAL RECORDS ........................................23

POINT III   TIAA-CREF'S ACCEPTANCE OF MS. SANFORD'S
BENEFICIARY DESIGNATION WAS PROPER AND SHOULD
BE UPHELD UNDER EITHER ARBITRARY AND CAPRICIOUS
OR DE NOVO REVIEW ..................................................27

A.  The District Court properly assessed TIAA-CREF'S decision in light
of the substantial compliance doctrine................................................27

B.  Mr. Sanford is wrong arguing that the change of beneficiary for was
defective because it was executed by the Schneiders rather than by
Ms. Sanford herself ........................................................................29

C.  Mr. Sanford is wrong in arguing that TIAA-CREF should  have
rejected the power of attorney form due to Ms. Sanford's (alleged)
incapacity...........................................................................................30

D.  Mr. Sanford is wrong in arguing that the change of beneficiary form
was defective due to the Schneiders' alleged failure to act jointly in
executing it ........................................................................................32

E.  TIAA-CREF followed proper procedure  .........................................33

CONCLUSION ...............................................................................36

CERTIFICATE OF SERVICE ......................................................37

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32 (a) .....................38

# TABLE OF AUTHORITIES

Page

*Conkwright v. Frommert,*
  559 U.S. 506 S. Ct. 1640 .................................................................20

*Davis v. Combes,*
  294 F.3d 931(7th Cir. 2002) .............................................................28

*DeFelice v. American Int'l Life Assurance,*
  112 F.3d 61 (2nd Cir. 1997).............................................................24

*Firestone Tire & Rubber Co. v. Bruch,*
  489 U.S. 101 (1989)..........................................................................20

*Hartford Life Ins. Co. v. Einhorn,*
  676 F.Supp.2d 116 (E.D.N.Y. 2009) ...............................................28

*Hobson v. Metropolitan Life Ins. Co.,*
  574 F.3d 75 (2nd Cir. 2009)..............................................................27

*Kinstler v. First Reliance Standard Life Ins.,*
  181 F.3d 243 (2nd Cir. 1999).......................................................21, 22

*Krauss v. Oxford Health Plans, Inc.,*
  517 F.3d 614, 622 (2nd Cir. 2008) ...................................................21

*Locher v. Unum Life Ins.,*
  389 F.3d 288 (2nd Cir. 2004)............................................................26

*McCarthy v. Aetna Life Ins.,*
  92 N.Y.2d 436 (N.Y. 1998) .........................................................28, 29

*Metropolitan Life Ins. v. Sullivan,*
  96 F.3d 18 (2nd Cir. 1996)...........................................................18, 29

*Metropolitan Life Ins. Co. v. Glenn,*
  554 U.S. 105 (2008) ..........................................................................20

*Miller v. Wolpoff & Abramson, L.L.P.,*
    321 F.3d 292 (2nd Cir. 2003)........................................................20

*Miller v. United Welfare Fund,*
    72 F.3d 1066 (2nd Cir. 1995)......................................................24

*Muller v. First Unum Life Ins.,*
    341 F.3d 119 (2nd Cir. 2003)............................................... 23, 24

*Nichols v. Prudential Ins.,*
    406 F.3d 98 (2nd Cir. 2005)........................................................21

*Phoenix Mutual Life Ins. Co. v. Adams,*
    30 F.3d 554 (4th Cir. 1994) ................................................. 23, 28

## STATUTES

29 U.S.C. § 1055 (d), (e)...............................................................9

5 U.S.C. § 8705 (a)......................................................................30

29 U.S.C. § 1132(a)(1)(B) .............................................................5

29 U.S.C. § 1132(a)(3)...................................................................5

Federal Employees' Group Life Insurance Act  5 U.S.C. §§ 8701-8716......... 18, 29

F.R.C.P. 12(b)(6).............................................................................6

New York General Obligations Law § 5-1504(1) ...................................... 18, 30, 31

## OTHER AUTHORITIES

*Changing Views on a Spouse's Inheritance,* by Scott M. Sherman,
    New York Law Journal, Sep. 17, 2007, p. S4, vol. 238, no. 54 ...................8

## STATEMENT OF THE ISSUES

1. Did the District Court properly review TIAA-CREF's decision to accept Gerlinde Sanford's change of beneficiary form under the arbitrary and capricious standard, given that the ERISA plans give TIAA-CREF discretion to accept change of beneficiary forms, and the law is clear that the decision of an ERISA fiduciary that has discretion is subject to deferential, arbitrary and capricious review? *See* point I below.

2. Did the District Court properly refuse to consider Ms. Sanford's medical records, which were not part of the administrative record of materials before TIAA-CREF when it accepted the change of beneficiary form, given that the law is clear that a court should not consider materials outside the administrative record in an ERISA case where the arbitrary and capricious standard of review applies? *See* point II below.

3. Did the District Court properly review TIAA-CREF's acceptance of Ms. Sanford's change of beneficiary form in light of the established substantial compliance doctrine, which provides that an ERISA fiduciary should accept a plan participant's change of beneficiary form even if the form only substantially complies with applicable requirements, rather than perfectly complying, so long as the participant's intent is clear (as was Ms. Sanford's intent in this case)? *See* point III-A below.

1

4. Did the District Court properly reject the argument of plaintiff William Sanford that Ms. Sanford should have executed the change of beneficiary form herself rather than appointing defendants Gerd and Gerlinde Schneider to do so, given that Ms. Sanford appointed the Schneiders to be her agents through a lawful power of attorney form that "specifically authorizes" the Schneiders "to change the beneficiary named on my TIAA-CREF account"? *See* point III-B below.

5. Did the District Court properly reject Mr. Sanford's argument that, under New York law, TIAA-CREF should have rejected the power of attorney form based on Ms. Sanford's alleged incapacity when she executed it, given that New York law requires a party to accept a power of attorney form unless the party has "actual knowledge" or a "reasonable basis" to believe that the person who executed the form was incapacitated, and given that TIAA-CREF had no actual knowledge or reasonable basis to believe Ms. Sanford was incapacitated here? *See* point III-C below.

6. Did the District Court properly reject Mr. Sanford's argument that the change of beneficiary form was invalid because the Schneiders failed to jointly execute it, given that both Schneiders signed the form, and that nothing in the law required both Schneiders to write every word on the form? *See* point III-D below.

2

7. Did the District Court properly reject Mr. Sanford's argument that TIAA-CREF followed improper procedures, given that the record establishes that TIAA-CREF gave Mr. Sanford ample opportunity to challenge the change of beneficiary form before TIAA-CREF paid Ms. Sanford's designated beneficiaries, but he never challenged the form until he commenced this lawsuit? *See* point III-E below.

## STATEMENT OF THE CASE

### Procedural History

**A. General Background**

This is a denial of benefits case under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. Plaintiff William Sanford is a beneficiary of two retirement plans of his former wife, Gerlinde Sanford, who died on April 27, 2010. Ms. Sanford's retirement plans were provided by her employer, Syracuse University ("SU") and were managed by defendant TIAA-CREF Individual and Institutional Service, LLC ("TIAA-CREF").[1]

Mr. Sanford challenges TIAA-CREF's acceptance of a change of beneficiary form on the day of Ms. Sanford's death. The change of beneficiary form reduced Mr. Sanford's interest in his wife's retirement plan accounts from 100% to 50%. The form was executed on behalf of Ms. Sanford by defendants Gerd and Georgia Schneider, who Ms. Sanford appointed as her agents through a power of attorney form. TIAA-CREF accepted the change of beneficiary form because it clearly demonstrated Ms. Sanford's intent to reduce Mr. Sanford's beneficiary

---

[1] Teachers Insurance and Annuity Association of America ("TIAA") and College Retirement Equities Fund ("CREF") fund retirement plans for institutions of higher education. TIAA-CREF, the named defendant in this case, is a broker-dealer that serviced the annuity contracts at issue and administered the distribution of the benefits in question.

4

interest from 100% to 50%, and to divide the remaining 50% equally among Ms. Sanford's four siblings.

### B. The Proceedings in Mississippi

Mr. Sanford commenced this action in Chancery Court in Lamar County, Mississippi, where he resides. *See* complaint, in dkt. # 1. TIAA-CREF removed the case to the United States District Court for the Southern District of Mississippi, based on both diversity and federal question jurisdiction. *See* notice of removal, dkt. # 1. (The docket sheet is in the Appendix ("A") at 1-14.)

In the Mississippi federal court, TIAA-CREF moved to dismiss the complaint, which asserted various claims under Mississippi law, on the basis of federal preemption pursuant to ERISA. *See* motion to dismiss, dkt. # 14, 15. The court granted the motion and dismissed the state law claims with prejudice. *See* order, dkt. no. 36. In the order granting TIAA-CREF's motion to dismiss, the court also granted Mr. Sanford leave to file an amended complaint pleading an ERISA claim. The court ruled that: "Plaintiff did not expressly plead an ERISA claim, but it appears as if [he] intended to do so." Dkt. # 36 at 7.

Mr. Sanford then filed an amended complaint. Dkt. # 41. The amended complaint made two ERISA claims against TIAA-CREF: one claim for monetary relief, pursuant to 29 U.S.C. § 1132(a)(1)(B); and one claim for injunctive relief, pursuant to 29 U.S.C. § 1132(a)(3). Dkt. # 41, ¶¶ 74, 75. TIAA-CREF moved to

5

dismiss the claim for injunctive relief on grounds that Mr. Sanford has an adequate remedy at law through his claim for money damages. The court granted TIAA-CREF's motion to dismiss the injunction claim, and Mr. Sanford no longer pursues that claim. *See* order, dkt. # 54, at 5.

### C. Transfer of this Case to the Northern District of New York

In the amended complaint, Mr. Sanford named the Schneiders as defendants for the first time, and he asserted various state law claims against them. Dkt. # 41, ¶¶ 61-68. The Schneiders, who are residents of Syracuse, moved to dismiss for lack of personal jurisdiction (dkt. # 57, 58), and Mr. Sanford cross-moved to transfer the case to the U.S. District Court for the Northern District of New York (dkt. # 61). The Mississippi federal court entered an order (dkt. # 71) that (1) declined to dismiss the claims against the Schneiders, and (2) transferred the case to the Northern District of New York (Hon. Mae A. D'Agostino).

### D. The Order Being Appealed

In the Northern District of New York, TIAA-CREF filed a motion for summary judgment based on the administrative record, which comprises the materials that were before TIAA-CREF when it made the decision to accept Ms. Sanford's change of beneficiary form. Dkt. # 99. The Schneiders filed a motion to dismiss under Rule 12(b)(6). Dkt. # 83. The District Court issued a Memorandum-Decision and Order that (1) granted summary judgment to TIAA-CREF and

6

dismissed the amended complaint with prejudice as against TIAA-CREF; and (2) dismissed the state law claims against the Schneiders without prejudice, for lack of pendent jurisdiction. A714-39. Mr. Sanford now appeals.

**Relevant Facts**

**A. The SU/TIAA-CREF Retirement Plans**

Gerlinde Sanford was an associate professor and coordinator of the German program at SU. A298. Ms. Sanford was a participant in two SU retirement plans that were managed by TIAA-CREF. A331-34 (TIAA-CREF summary of Ms. Sanford's accounts).

One of Ms. Sanford's retirement plans is a noncontributory plan (the "Syracuse University TIAA-CREF Noncontributory Retirement Plan" (A18)); it provides benefits resulting from "contributions made by the University" (A21). The other plan is a voluntary contribution plan (the "Syracuse University TIAA-CREF Voluntary Tax-Deferred Annuity Plan" (A76)); it provides benefits resulting from "contributions made by the University pursuant to salary reduction agreements between the University and Participants") (A79).

TIAA-CREF issues annuities to plan participants and provides the investment accounts into which contributions to the plans are deposited. A28, 83. In accordance with the terms of the plans, TIAA-CREF manages and maintains the accounts. A31-51, 86-109.

Notably, the plans specifically give TIAA-CREF discretion to accept designations of beneficiaries, as follows: "***Each Participant may designate one or more Beneficiaries and contingent Beneficiaries in the manner acceptable to TIAA-CREF***." A45, 101 (emphasis added). Likewise, the annuity contracts issued by TIAA-CREF to Ms. Sanford provide that she may change her beneficiaries simply by providing notice "in form and wording satisfactory to [TIAA-CREF]." A177 (TIAA annuity, § 9); A208 (CREF annuity, § 9, same language). The annuity contracts, moreover, facilitate beneficiary changes made when a participant is near death, by providing that a change in beneficiaries is effective "as of the date the notice was signed, whether or not the Annuitant is living at the time of such receipt [of the notice by TIAA-CREF]." A178 (TIAA annuity, § 18); A210 (CREF annuity, § 18).[2]

Under the terms of the plans, the spouse of a participant is entitled to be "the Participant's Beneficiary for 50% of the value of each applicable Investment Account," unless the spouse consents in writing to a change of beneficiary (or if the couple is legally separated or the spouse is missing). A45, 101. This spousal

_____

[2] Provisions such as this are typical in retirement plans and contracts, because participants frequently make changes in beneficiaries when they are close to death, as Ms. Sanford did here. *See* "Changing Views on a Spouse's Inheritance," by Scott M. Sherman, New York Law Journal, Sep. 17, 2007, p. S4, vol. 238, no. 54 ("A dying client may want to take steps to minimize his spouse's inheritance for a number of reasons").

entitlement to a 50% beneficiary interest is mandated by ERISA. *See* 29 U.S.C. § 1055(d), (e).

### B. Ms. Sanford's Initial Beneficiary Designation

Ms. Sanford enrolled in the SU/TIAA-CREF retirement plans in 1994. A298 (enrollment form). At that time, she designated her husband, William Sanford, as her sole primary beneficiary. A298, 211-12 (enrollment confirmation form).

### C. Ms. Sanford's Longstanding Intention to Change Her Beneficiary

For at least two years before her death, Ms. Sanford intended to reduce or eliminate her husband's beneficiary interest in her retirement plans. However, she did not put this intention into effect until the day before she died.

On April 30, 2008 – about two years before her death on April 27, 2010 – Ms. Sanford met with a TIAA-CREF wealth management advisor, Michael Graves. A300-01. As stated in Mr. Graves' summary of this meeting, Ms. Sanford told Mr. Graves that she and her husband "had been separated for a long time," and she "expressed the wish to change her beneficiary." A300. Mr. Graves explained to Ms. Sanford that she "could reduce [her husband's] benefit to 50% of her account, but couldn't reduce this further unless he was to sign off in front of a notary or through a legal process, like divorce." A300. *See also* A485 (email from Margaret Byrne to

Shantanu Alam, cc: Michael Graves, confirming Mr. Graves' meeting with Ms. Sanford).

Ms. Sanford had a second meeting with Michael Graves on July 8, 2008. At this meeting, they again "discussed reducing her husband's benefit to 50%." A300. After the meeting, Mr. Graves sent a change of beneficiary form to Ms. Sanford. A300. Ms. Sanford, however, did not immediately complete the form.

### D. Ms. Sanford's Reduction of Her Husband's Beneficiary Interest to 50%

Ms. Sanford died of cancer on April 27, 2010. A349 (death certificate). She had approximately $1.7 million in her TIAA-CREF accounts at the time of her death. A332.

On April 26, the day before she died, Ms. Sanford executed a power of attorney form appointing Gerd and Georgia Schneider as her agents. A429-37. The power of attorney form granted the Schneiders authority to act on Ms. Sanford's behalf with respect to all the areas listed on the form – specifically including "retirement benefit transactions." A430.

Moreover, as part of the power of attorney form, Ms. Sanford executed a major gifts rider that "*specifically authorizes*" the Schneiders "*to change the beneficiary named on my TIAA-CREF account.*" A435 (emphasis added). While this major gifts rider was not necessary to authorize the Schneiders to change the beneficiary of Ms. Sanford's TIAA-CREF accounts – since the power of attorney

10

form already authorized them to conduct "retirement benefit transactions" (A430) – it provides unambiguous confirmation of Ms. Sanford's intent to change the beneficiaries of her retirement plans.

On April 27, 2010 – the day after Ms. Sanford signed the power of attorney form – the Schneiders executed a change of beneficiary form for Ms. Sanford's SU/TIAA-CREF retirement plans. A360-66. This form reduced Mr. Sanford's beneficiary interest from 100% to 50%, as permitted by the plans and ERISA. A361. The change of beneficiary form divided the remaining 50% interest equally among Ms. Sanford's four siblings, giving each of them a 12.5% interest in her retirement accounts. A361-62.

TIAA-CREF received the change of beneficiary form from the Schneiders on April 27, 2010 at 9:49 a.m. A360. Ms. Sanford died later that day, at 1:30 pm. A349 (death certificate).

### E. TIAA-CREF's Initial, Erroneous Rejection and Subsequent, Proper Acceptance of the Change of Beneficiary Form

TIAA-CREF's Beneficiary Services Department initially rejected the change of beneficiary form. A409 (letter rejecting form). The basis for the rejection was that the Schneiders wrote the name of one of Ms. Sanford's four sibling beneficiaries (Gertrude Hillebrand) in a space on the form labeled "contingent beneficiary" rather than "primary beneficiary"; this caused the percentage interests granted to the listed "primary beneficiaries" – 50% for Mr. Sanford and 12.5% apiece for three siblings –

11

to total less than 100%. A361-62 (change of beneficiary form); A409 (letter rejecting form).

TIAA-CREF subsequently corrected its decision and accepted the change in beneficiaries – because the form makes very clear that Ms. Sanford's and the Schneiders' intent was to make all four of Ms. Sanford's siblings primary beneficiaries with equal 12.5% interests. To begin with, the change of beneficiary form unambiguously states that each sibling has a 12.5% beneficiary interest. A361-62. Moreover, the Schneiders had no choice but to write the name of the fourth sibling, Gertrude Hillebrand, in the "contingent beneficiary" space – because the form provides only four spaces for listing primary beneficiaries, and those four spaces were taken up by Mr. Sanford and the other three siblings. A361-62.

In addition, a review of the change of beneficiary form shows that the Schneiders *initially* wrote that the three siblings listed in the "primary beneficiary" spaces were entitled to interests of 16⅔%. A361-62. This would have given those three siblings a total 50% interest in the TIAA-CREF accounts (3 x 16⅔% = 50%), and thus excluded the fourth sibling from any interest. But Mr. Schneider specifically crossed out 16⅔%, replaced it with 12.5%, and initialed 12.5% – for each of the first three siblings listed on the form. A361-62. This unequivocally establishes the intent to make all four siblings primary beneficiaries with equal 12.5% interests.

12

Given the clear intention of Ms. Sanford and the Schneiders to give Mr. Sanford a 50% interest and each of the four siblings a 12.5% interest, TIAA-CREF accepted the change of beneficiary form as written. A499 (Matthew Kohlrus email dated Aug. 11, 2010 stating that the change of beneficiary form "was ultimately ruled to be valid after legal review as it was clear what the intent was"); A393-94 (memorandum of Stacy Martinez dated May 8, 2010 referencing legal review).

**F. Mr. Sanford's Failure to Challenge the Change of Beneficiary Form**

TIAA-CREF gave Mr. Sanford ample opportunity to challenge Ms. Sanford's change of beneficiary form – and waited until five months after Ms. Sanford's death before paying the sibling beneficiaries, to give Mr. Sanford time to decide whether to challenge the form – but he never challenged the change of beneficiaries (until commencing this lawsuit). The record shows as follows:

- Before July 2, 2010, Mr. Sanford spoke with Matthew Kohlrus, a TIAA-CREF customer relations manager. A subsequent email from Mr. Kohlrus states that, during that conversation, Mr. Sanford "had not decided" whether to challenge the beneficiary designation. A499. In the conversation, Mr. Kohlrus advised Mr. Sanford that any challenge to the beneficiary designation would have to be in writing. A499.

13

- Mr. Sanford's counsel at the time, Warren Bader, wrote a letter to TIAA-CREF dated July 2, 2010, after Mr. Sanford learned of the change of beneficiary form. This letter asked TIAA-CREF to "[k]indly put a hold on this matter" before paying the sibling beneficiaries, and to contact Mr. Bader. A482.

- Mr. Bader wrote another letter to TIAA-CREF, dated August 19, 2010, in which he expressed "serious concerns" about Ms. Sanford's beneficiary designation; asked TIAA-CREF to call him to discuss the matter; and mentioned the possibility of litigation – but did not actually assert that the beneficiary designation was invalid. A522-23.

- An August 26, 2010 email written by TIAA-CREF's associate general counsel Margaret Byrne stated that she spoke with Mr. Bader that morning, and that he said "he will try to speak with his client today and get back to me as to whether they will challenge the matter." A549.

- Tellingly, Mr. Bader's last communication to TIAA-CREF – a September 2, 2010 email to Ms. Byrne responding to her question whether Mr. Sanford would challenge the beneficiary designation – simply stated that ***Mr. Sanford had instructed Mr. Bader "to do more***

*'due diligence'"* before they would make that decision.    A546

(emphasis added).

### G. TIAA-CREF's Payment of the Sibling Beneficiaries, in Accordance with Ms. Sanford's Change of Beneficiary Form

After sending the "due diligence" email, Mr. Bader failed to respond to repeated messages from Ms. Byrne asking whether Mr. Sanford would challenge the beneficiary designation.  A569.  Accordingly, on September 28, 2010, TIAA-CREF sent Mr. Bader a letter notifying him that TIAA-CREF must fulfill its duty to pay Ms. Sanford's siblings, who were designated in her change of beneficiary form, because TIAA-CREF had received no information indicating that the form did not reflect Ms. Sanford's intent, as follows:

> We initially received notice of a possible challenge on July 6.  After subsequent conversations between yourself and our legal department this file has remain[ed] open since August 19.  ***This time has been afforded to allow your client a chance to make a claim*** to the portion of Ms. Sanford's TIAA-CREF accounts he is not entitled to, as per her most recently approved beneficiary designation.  Please note that ***in the absence of documentation to the contrary we must conclude that the materials received from Ms. Sanford's power of attorneys reflect her intent.***  At this time we must move forward to pay the beneficiaries of record their entitlement to these accounts in accordance with the change of beneficiary [form].

A567 (emphasis added).  Ms. Byrne also sent Mr. Bader a similar letter two days later.  A569.

15

## SUMMARY OF ARGUMENT

The District Court properly upheld TIAA-CREF's decision to accept Ms. Sanford's change of beneficiary form, because the form unambiguously expressed her intent to change reduce Mr. Sanford's share in her accounts from 100% to 50%, and to distribute the remaining 50% to her four siblings in equal 12.5% shares.

As discussed in point I below, the District Court correctly reviewed TIAA-CREF's acceptance of the beneficiary change under the arbitrary and capricious standard. The law is clear that, where an ERISA plan grants a fiduciary discretion to make a decision, that decision is subject to deferential review under the arbitrary and capricious standard. Here, the plans unequivocally give TIAA-CREF discretion to accept beneficiary changes by stating that: "Each Participant may designate one or more Beneficiaries and contingent Beneficiaries in the manner acceptable to TIAA-CREF." A45, 101. There is simply no basis in the law for subjecting TIAA-CREF's straightforward decision to accept a participant's change of beneficiary form to full, de novo review in court.

As discussed in point II, the District Court properly declined to consider Ms. Sanford's medical records, which were not part of the administrative record – the materials before TIAA-CREF when it made its decision. Mr. Sanford concedes that, where an ERISA fiduciary's decision is reviewed under the arbitrary and

16

capricious standard, consideration of materials outside the administrative record is improper. But Mr. Sanford argues that TIAA-CREF's decision is subject to de novo review, and that there is good cause for consideration of Ms. Sanford's medical records. Both of these contentions are wrong. TIAA-CREF's discretionary decision is subject to deferential review – and even if it were not, there is no good cause for consideration of materials outside the administrative record where, as here, the fiduciary had no conflict of interest. It is undisputed that TIAA-CREF had no conflict of interest, since TIAA-CREF did not stand to gain anything by paying 50% of Ms. Sanford's funds to her siblings rather than to Mr. Sanford. TIAA-CREF was going to pay someone either way.

As discussed in point III, TIAA-CREF's decision to accept Ms. Sanford's change of beneficiary form was proper. As discussed in point III-A, acceptance of change of beneficiary forms is governed by the "substantial compliance doctrine," which provides that such forms should be accepted even if there is only substantial, rather that absolute, compliance with applicable requirements, so long as the participant's intent to change beneficiaries is clear. Here, Ms. Sanford's intent to reduce Mr. Sanford's share of her accounts to 50% was clearly expressed – in both the power of attorney form, which "specifically authorizes" the Schneiders "to change the beneficiary named in my TIAA-CREF account" (A435), and in the

17

change of beneficiary form, which unambiguously grants Mr. Sanford a 50% interest in the accounts and distributes the other half to the four siblings.

As discussed in point III-B, Mr. Sanford is wrong in arguing that Ms. Sanford should have executed the change of beneficiary form herself rather than appointing the Schneiders to do so through the power of attorney form. Mr. Sanford relies on a decision of this Court – *Metropolitan Life Ins. v. Sullivan,* 96 F.3d 18 (2nd Cir. 1996) – which applied the Federal Employees Group Life Insurance Act, 5 U.S.C. §§ 8701-8716, a statute that is inapplicable to this case. Nothing in the law required TIAA-CREF to reject Ms. Sanford's lawful power of attorney form.

As discussed in point III-C, Mr. Sanford is wrong in arguing that, under New York law, TIAA-CREF should have rejected the power of attorney form based on Ms. Sanford's supposed incapacity when she signed it. New York law actually prohibits a party from rejecting a power of attorney form unless the party has "actual knowledge or a reasonable basis for believing that the principal was incapacitated at the time the power of attorney was executed." New York General Obligations Law §5-1504(1)(a)(6). TIAA-CREF had no such "actual knowledge" or "reasonable basis" here. Indeed, Mr. Sanford does not even argue that TIAA-CREF knew anything about Ms. Sanford's alleged incapacity (since Mr. Sanford failed to provide information on this subject to TIAA-CREF despite having ample

18

opportunity to do so); he merely argues that TIAA-CREF should have investigated the issue.

As discussed in point III-D, Mr. Sanford is wrong in arguing that the change of beneficiary form is invalid because Gerd and Georgia Schneider – both of whom were appointed as Ms. Sanford's agents in the power of attorney form – failed to act jointly in executing it. Both Schneiders signed the change of beneficiary form. Mr. Sanford cites no authority supporting his novel theory that the form is invalid because only one of the Schneiders (Gerd) actually wrote and initialed parts of the form. Nothing in the law provides that, where multiple agents must act together, each individual agent must participate in the actual drafting of documents, rather than simply signing the completed documents.

As discussed in point III-E, Mr. Sanford is wrong in arguing that TIAA-CREF somehow followed improper procedure by failing to adequately impress upon Mr. Sanford's lawyer the importance of submitting evidence showing that the change of beneficiary form was invalid. The record demonstrates that TIAA-CREF waited until five months after Ms. Sanford's death before paying the sibling beneficiaries, so that Mr. Sanford could decide whether to challenge the change of beneficiary form. But he never decided to challenge the form until after TIAA-CREF fulfilled its obligation to pay the siblings, at which point Mr. Sanford commenced this lawsuit.

19

## ARGUMENT

For the reasons discussed below, the District Court properly granted summary judgment to TIAA-CREF. This Court reviews de novo the District Court's decision to grant summary judgment. *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2nd Cir. 2003).

## POINT I

### THE DISTRICT COURT PROPERLY REVIEWED TIAA-CREF'S DECISION TO ACCEPT MS. SANFORD'S CHANGE OF BENEFICIARY FORM UNDER THE ARBITRARY AND CAPRICIOUS STANDARD.

The law is clear that, where an ERISA plan grants a fiduciary discretion, the fiduciary's decisions are subject to deferential review under the arbitrary and capricious standard. Indeed, the Supreme Court has repeatedly ruled that, if an ERISA plan grants a fiduciary "*discretionary authority* to determine eligibility for benefits, [t]rust principles make a *deferential standard* of review appropriate." *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 111 (2008) (emphasis in original; citations omitted), quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 115 (1989); *Conkwright v. Frommert,* 559 U.S. 506, 512 (2010) (same principle).

In this case, the plans specifically give TIAA-CREF discretion to accept beneficiary designations. The plans state that: "Each Participant may designate one or more Beneficiaries and contingent Beneficiaries *in the manner acceptable*

20

*to TIAA-CREF*." A45, 101 (emphasis added). Similarly, the annuity contracts issued by TIAA-CREF to Ms. Sanford authorize her to change beneficiaries simply by providing notice "in form and wording satisfactory to [TIAA-CREF]." A177, 208.

This Court has explained that, where an ERISA plan establishes a "subjective standard" for a fiduciary's decisions, the fiduciary has discretion, such that arbitrary and capricious review is appropriate. *See Krauss v. Oxford Health Plans, Inc.,* 517 F.3d 614, 622 (2nd Cir. 2008). This Court stated in *Krauss*:

> A reservation of discretion need not actually use the words "discretion" or "deference" to be effective, but it must be clear. Examples of such clear language include authorization to "resolve all disputes and ambiguities," or make benefits determinations "in our judgment." In general, language that establishes an objective standard does not reserve discretion, while *language that establishes a subjective standard does*.

517 F.3d at 622 (emphasis added) (ruling that fiduciary had discretion) (quoting *Nichols v. Prudential Ins.,* 406 F.3d 98, 108 (2nd Cir. 2005)). Here, the provision in the plans stating that participants may designate beneficiaries "in the manner acceptable to TIAA-CREF" clearly establishes a "subjective standard" (517 F.3d at 622), under which TIAA-CREF has discretion to accept a beneficiary designation.

Mr. Sanford relies on this Court's decision in *Kinstler v. First Reliance Standard Life Ins.,* 181 F.3d 243 (2nd Cir. 1999). *Kinstler* is plainly distinguishable from this case. The plan in *Kinstler* required the participant to provide

21

"satisfactory proof of Total Disability" to the fiduciary. 181 F.3d at 251. In

*Kinstler,* this Court distinguished this language from language such as that in the

TIAA-CREF plans, which clearly establishes a subjective standard. This Court

reasoned:

> it is not clear whether the key language, requiring the claimant to
> "submit[] satisfactory proof of Total Disability to us," means only
> that the claimant must submit ***to First Reliance*** proof that is
> satisfactory or that the claimant must submit proof that is
> ***satisfactory to First Reliance.*** Since the plan administrator bears
> the burden of proving that the arbitrary and capricious standard of
> review applies, we think the needless ambiguity in the wording of
> the policy should be resolved against First Reliance.

181 F.3d at 251-52 (emphasis in original; citation omitted). Here, of course, the

plans establish an unambiguously subjective, discretionary standard by authorizing

participants to change beneficiaries "in the manner acceptable to TIAA-CREF."

A45, 101.[3]

Moreover, as the District Court recognized (at A727), the nature of TIAA-

CREF's decision here – straightforward acceptance of a change of beneficiary

form, as opposed to complex analysis of "proof of Total Disability" as in *Kinstler* –

underscores TIAA-CREF's discretion. Indeed, as discussed in point III-A below,

---

[3] *Kinstler* stated in dicta that the phrase "'proof satisfactory to [the decision-maker]' is an inadequate way to convey the idea that a plan administrator has discretion." 181 F.3d at 252. But under the holding of *Kinstler* discussed above (and under this Court's subsequent decision in *Krauss,* 517 F.3d at 622), the language at issue here – authorizing participants to change beneficiaries "in the manner acceptable to TIAA-CREF" – clearly establishes a subjective, discretionary standard.

22

the "substantial compliance doctrine" – which provides that change of beneficiary forms should be accepted even if such forms only substantially, rather than totally, comply with ERISA plan requirements – gives fiduciaries broad discretion to approve such forms so long as the intent of the decedent is clear (as Ms. Sanford's intent was clear in this case). *See Phoenix Mutual Life Ins. v. Adams,* 30 F.3d 554, 565 (4th Cir. 1994) ("The insured decedent need not actually comply, but need only *substantially* comply with the change of beneficiary provisions of the policy to effectuate the desired change") (emphasis in original).

## POINT II

### THE DISTRICT COURT PROPERLY DECLINED TO CONSIDER MS. SANFORD'S MEDICAL RECORDS.

The District Court properly refused to consider Ms. Sanford's medical records, which were not part of the administrative record – the materials before TIAA-CREF when it made the decision at issue. A727-730. The medical records were not part of the administrative record because Mr. Sanford failed to submit them to TIAA-CREF. This Court reviews the District Court's decision not to consider the medical records for abuse of discretion. *Muller v. First Unum Life Ins.,* 341 F.3d 119, 125 (2nd Cir. 2003).

The law is clear that, when an ERISA fiduciary's decision is subject to arbitrary and capricious review, the court should not consider materials outside the administrative record. *See Miller v. United Welfare Fund,* 72 F.3d 1066, 1071 (2nd

23

Cir. 1995) ("a district court's review under the arbitrary and capricious standard is limited to the administrative record"). Mr. Sanford does not argue otherwise.

What Mr. Sanford argues is that TIAA-CREF's simple acceptance of Ms. Sanford's unambiguous beneficiary designation is subject to full, de novo review in court, and that the District Court therefore should have permitted discovery and considered materials beyond the administrative record. This is incorrect. As discussed above, TIAA-CREF's decision is subject to arbitrary and capricious review. Furthermore, as the District Court recognized (at A728-29), even if de novo review applies, there is no good cause in this case for considering materials outside the administrative record.

This Court has ruled that even de novo review of an ERISA fiduciary's decision is limited to the administrative record "unless the district court finds good cause to consider additional evidence." *DeFelice v. American Int'l Life Assurance,* 112 F.3d 61, 66-67 (2nd Cir. 1997); *see also Muller,* 341 F.3d at 125 (same principle). This Court has recognized one principal category of "good cause" that justifies consideration of evidence outside the administrative record: "[a] demonstrated conflict of interest in the administrative reviewing body." *DeFelice,* 112 F.3d at 67.

24

Mr. Sanford does not argue that TIAA-CREF had a conflict of interest. Nor could he: TIAA-CREF did not stand to gain in any way by paying Mr. Sanford only 50%, rather than 100%, of the funds in Ms. Sanford's accounts. TIAA-CREF did not keep the remaining 50% for itself; it paid those funds to Ms. Sanford's designated sibling beneficiaries.

Mr. Sanford contends in his brief (at 19-21) that, notwithstanding the lack of a conflict of interest, there is good cause to consider the medical records because TIAA-CREF followed improper procedure, such that Mr. Sanford had no opportunity to present the records to TIAA-CREF before it accepted the change of beneficiary form. This is simply wrong.

TIAA-CREF's procedures gave Mr. Sanford more than sufficient opportunity to submit any evidence, such as the medical records. TIAA-CREF waited until five months after Ms. Sanford's death to pay the designated sibling beneficiaries, so that Mr. Sanford could challenge the beneficiary form – and submit any evidence supporting a challenge – if he wished. A567, 569. During this time, Mr. Sanford never submitted the medical records to TIAA-CREF.

It is clear that Mr. Sanford had possession of the medical records before TIAA-CREF paid the sibling beneficiaries (and that he therefore could have provided them to TIAA-CREF): Mr. Sanford's attorney mentioned the records in a phone call with TIAA-CREF on August 26, 2010, a month before TIAA-CREF

25

paid the sibling beneficiaries.   A653 (email from Margaret Byrne to Matthew Kohlrus stating that Mr. Sanford's lawyer referred in a phone call to a "nurses note").   In this call, Mr. Sanford's counsel said that he would get back to TIAA-CREF about whether Mr. Sanford would challenge the beneficiary form, but he never did do that.

Moreover, even if TIAA-CREF's procedures were somehow improper (they were not), that does not justify consideration of evidence outside the administrative record. This Court has recognized that an ERISA fiduciary's "insufficient procedures" can be a relevant factor in a court's decision whether to consider evidence beyond the administrative record – *if* the fiduciary has a conflict of interest (unlike TIAA-CREF). *Locher v. Unum Life Ins.,* 389 F.3d 288, 296 (2nd Cir. 2004).  In *Locher,* this Court explained that:

> Where sufficient procedures for initial or appellate review of a claim are lacking, ***there exist greater opportunities for conflicts of interest to be exacerbated*** and, in such a case, the fairness of the ERISA appeals process cannot be established using only the record before the administrator.

389 F.3d at 296 (emphasis added).  Mr. Sanford cites no case holding that where, as here, an ERISA fiduciary does ***not*** have a conflict of interest, improper procedures alone warrant consideration of extra-record materials.

## POINT III

## TIAA-CREF'S ACCEPTANCE OF MS. SANFORD'S BENEFICIARY DESIGNATION WAS PROPER AND SHOULD BE UPHELD UNDER EITHER ARBITRARY AND CAPRICIOUS OR DE NOVO REVIEW.

This Court has explained the arbitrary and capricious standard of review in

ERISA denial of benefits cases as follows:

> Under the arbitrary and capricious standard of review, we may overturn [a fiduciary's] decision to deny ERISA benefits *only if it was without reason, unsupported by substantial evidence, or erroneous as a matter of law.* This scope of review is narrow; thus, we are not free to substitute our own judgment for that of the insurer as if we were considering the eligibility issue anew.

*Hobson v. Metropolitan Life Ins. Co.,* 574 F.3d 75, 83-84 (2nd Cir. 2009) (internal

quotation marks and brackets omitted; emphasis added). As discussed below, it is

clear that TIAA-CREF's decision to accept Ms. Sanford's change of beneficiary

form was not "without reason, unsupported by substantial evidence or erroneous as

a matter of law." 574 F.3d at 83-84. Indeed, even under the de novo review

standard, TIAA-CREF's decision was plainly proper.

### A. The District Court properly assessed TIAA-CREF's decision in light of the substantial compliance doctrine.

Before turning to Mr. Sanford's specific arguments about the change of

beneficiary form, it bears noting that the acceptance of beneficiary changes is

governed by the "substantial compliance doctrine," which provides that ERISA

fiduciaries should accept a plan participant's change of beneficiaries even in the

27

absence of total compliance with applicable rules and requirements, so long as the intent of the plan participant to make the change is clear. As the Fourth Circuit has explained:

> Pursuant to federal common law, an insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy . . . . The point of the doctrine, whether found in federal or state law, is ***to give effect to an insured's intent to comply when that intent is evident.*** The insured decedent need not actually comply, but need only substantially comply with the change of beneficiary provisions . . . .

*Phoenix Mutual Life Ins. Co. v. Adams,* 30 F.3d 554, 564-65 (4th Cir. 1994) (emphasis added).

In *Phoenix Mutual,* the court applied the substantial compliance doctrine and approved a change of beneficiary form although the decedent had not even included the new beneficiary's name in the form. 30 F.3d at 557, 567-68. Similarly, in *Hartford Life Ins. Co. v. Einhorn,* 676 F.Supp.2d 116, 135-38 (E.D.N.Y. 2009), the court applied the substantial compliance doctrine and approved a change of beneficiary form although the form was undated. And in *Davis v. Combes,* 294 F.3d 931, 940-42 (7th Cir. 2002), the court applied the substantial compliance doctrine and approved a change of beneficiary form that was unsigned and undated. *See also McCarthy v. Aetna Life Ins.,* 92 N.Y.2d 436,

28

440-41 (N.Y. 1998) (explaining application of substantial compliance doctrine under New York law).

In this case, the change of beneficiary form unambiguously demonstrated Ms. Sanford's intent to reduce Mr. Sanford's share of her accounts to 50% and to give the other 50% to her four siblings in equal 12.5% shares. A361-63. Under the substantial compliance doctrine, TIAA-CREF's acceptance of the form was plainly proper.

**B. Mr. Sanford is wrong in arguing that the change of beneficiary form was defective because it was executed by the Schneiders rather than by Ms. Sanford herself.**

Mr. Sanford argues (at 23) that Ms. Sanford had no right to appoint the Schneiders as her agents for purposes of executing the change of beneficiary form, and that she was required to execute the form herself. This is manifestly wrong.

Mr. Sanford relies entirely on this Court's decision in *Metropolitan Life Ins. v. Sullivan,* 96 F.3d 18 (2nd Cir. 1996), which is readily distinguishable from this case, as it is based on the Federal Employees' Group Life Insurance Act ("FEGLIA"), 5 U.S.C. §§ 8701-8716 – a statute that has no bearing on the case at bar.

In *Metropolitan Life,* this Court rejected a change of beneficiary form submitted by the decedent's attorney-in-fact because FEGLIA "does not permit such forms to be executed by a third party acting under a power of attorney." 96

29

F.3d at 19. This Court quoted FEGLIA's provision requiring beneficiaries to be "designated by the employee in a signed and witnessed writing . . . . a will or other document not so executed and filed has no force or effect." 96 F.3d at 19 (quoting 5 U.S.C. § 8705(a)). This Court also cited a memorandum of the federal Office of Personnel Management interpreting FEGLIA, which specifically stated that change of beneficiary forms "may not be filed in behalf of an employee or retiree by a third party who has been granted power of attorney . . . ." 96 F.3d at 20.

In this case, nothing in the law or the ERISA plans precludes a plan participant from using a power of attorney form to appoint an agent to execute a change of beneficiary designation. To the contrary, the plans simply provide that: "Each Participant may designate one or more Beneficiaries and contingent Beneficiaries in the manner acceptable to TIAA-CREF." A45, 101. That is what Ms. Sanford did.

### C. Mr. Sanford is wrong in arguing that TIAA-CREF should have rejected the power of attorney form due to Ms. Sanford's (alleged) incapacity.

Mr. Sanford argues (at 21-23) that, under New York law, TIAA-CREF was required to reject the power of attorney form based on Ms. Sanford's alleged incapacity when she signed it. This is incorrect.

New York law, in fact, prohibits a party from rejecting a power of attorney form except in certain limited, enumerated circumstances. *See* New York General Obligations Law ("GOL") § 5-1504(1). With respect to incapacity, a party may –

30

but is not required to – reject a power of attorney form if and only if the party has "actual knowledge or a reasonable basis for believing that the principal was incapacitated at the time the power of attorney was executed." GOL § 5-1504(1)(a)(6).

Here, the record is clear that TIAA-CREF had neither "actual knowledge" nor a "reasonable basis" for believing that Ms. Sanford was incapacitated when she signed the power of attorney form. Indeed, Mr. Sanford does not even argue that TIAA-CREF knew Ms. Sanford was incapacitated; he merely claims that TIAA-CREF was "on notice to investigate further." Sanford Br. at 22. And Mr. Sanford points to only one piece of information that supposedly put TIAA-CREF on notice to investigate Ms. Sanford's capacity: an oral statement by Mr. Sanford's lawyer to TIAA-CREF, reporting on a statement by Mr. Sanford to the lawyer, reporting on an alleged nurse's note that Mr. Sanford had read, to the effect that Ms. Sanford had "some days earlier been confused." A653; *see* Sanford Br. at 22. Needless to say, this did not give TIAA-CREF "actual knowledge" or a "reasonable basis" to believe that Ms. Sanford was incapacitated.

Furthermore, under New York law, even if TIAA-CREF had a "reasonable basis" to think that Ms. Sanford was incapacitated (it did not), in the absence of "actual knowledge," TIAA-CREF may not be held liable for accepting the power of attorney form. *See* GOL § 5-1504(3) ("In the absence of actual knowledge that

31

the principal lacked capacity to execute a statutory short form power of attorney

. . . *no third party receiving and retaining a properly executed statutory short form power of attorney . . . shall incur any liability* by reason of acting upon the authority thereof . . . .") (emphasis added). Since it is undisputed that TIAA-CREF had no actual knowledge that Ms. Sanford was incapacitated when she signed the power of attorney form, New York law provides no basis for holding TIAA-CREF liable for accepting that form.

### D. Mr. Sanford is wrong in arguing that the change of beneficiary form was defective due to the Schneiders' alleged failure to act jointly in executing it.

The power of attorney form appoints Gerd and Georgia Schneider to represent Ms. Sanford and states that the Schneiders "must act together" as her agents. A339. Mr. Sanford contends (at 27-29) that the change of beneficiary form violates the joint action requirement because only Gerd Schneider – and not Georgia – actually wrote and initialized the sibling beneficiaries' percentage shares on the form. A361-62.

Again, Mr. Sanford is incorrect. Both Schneiders signed the change of beneficiary form. A363. This satisfied the power of attorney form's "must act together" requirement. Mr. Sanford cites no authority, because there is none, holding that, where multiple agents must act together, every one of the agents must

32

physically write and initial every line of every document that they execute. Such a rule would be impracticable and absurd.

The Schneiders acted together by signing the change of beneficiary form. In these circumstances, particularly in light of the substantial compliance doctrine, TIAA-CREF's acceptance of the form was proper.

### E. TIAA-CREF followed proper procedure.

Mr. Sanford argues that TIAA-CREF failed to follow proper procedure. In essence, he claims (at 29-35) that TIAA-CREF somehow should have convinced his lawyer to provide TIAA-CREF evidence showing that Ms. Sanford's beneficiary change should be rejected.

Mr. Sanford is incorrect. The administrative record demonstrates that TIAA-CREF gave Mr. Sanford considerable time to challenge Ms. Sanford's change of beneficiaries, and to provide any evidence supporting such a challenge. Mr. Sanford, however, never told TIAA-CREF whether he would challenge the beneficiary designation. The record demonstrates:

- Before July 2, 2010, Mr. Sanford advised TIAA-CREF that he had not decided whether to challenge the beneficiary designation. A499. TIAA-CREF advised Mr. Sanford that any challenge to the beneficiary designation would have to be in writing. A499.

- Mr. Sanford's counsel Warren Bader wrote a letter to TIAA-CREF dated July 2, 2010. This letter asked TIAA-CREF to "[k]indly put a hold on this matter" before paying the sibling beneficiaries, and to contact Mr. Bader. A482. TIAA-CREF refrained from paying the sibling beneficiaries while Mr. Sanford considered whether to challenge the beneficiary designation.

- On August 26, 2010, Mr. Bader told TIAA-CREF's associate general counsel Margaret Byrne that (as stated in Ms. Byrne's email summarizing the call), "he will try to speak with his client today and get back to me as to whether they will challenge the matter." A549.

- On September 2, 2010, Mr. Bader sent an email to Ms. Byrne responding to her question whether Mr. Sanford would challenge the beneficiary designation. He said that Mr. Sanford had instructed him "to do more 'due diligence'" before they would make that decision. A546.

- After sending the "due diligence" email, Mr. Bader failed to respond to repeated messages from Ms. Byrne asking whether Mr. Sanford would challenge the beneficiary designation. A569.

Accordingly, on September 28, 2010, TIAA-CREF sent Mr. Bader a letter notifying him that TIAA-CREF would fulfill its obligation to pay Ms. Sanford's siblings, as follows:

> We initially received notice of a possible challenge on July 6. After subsequent conversations between yourself and our legal department this file has remain[ed] open since August 19. ***This time has been afforded to allow your client a chance to make a claim*** to the portion of Ms. Sanford's TIAA-CREF accounts he is not entitled to, as per her most recently approved beneficiary designation. Please note that ***in the absence of documentation to the contrary we must conclude that the materials received from Ms. Sanford's power of attorneys reflect her intent.*** At this time we must move forward to pay the beneficiaries of record their entitlement to these accounts in accordance with the change of beneficiary [form].

A567 (emphasis added).

In sum, TIAA-CREF gave Mr. Sanford full and fair opportunity to challenge Ms. Sanford's change of beneficiaries. That Mr. Sanford and his counsel did not take advantage of that opportunity is not the fault of TIAA-CREF. After waiting until five months after Ms. Sanford's death to see if Mr. Sanford would challenge the change of beneficiary form, TIAA-CREF properly paid the sibling beneficiaries in accordance with that form, as there was no evidence indicating that the form did not reflect her intent.

## CONCLUSION

For these reasons, TIAA-CREF requests that this Court enter an order: affirming the judgment and the memorandum-decision and order of the District Court; granting TIAA-CREF summary judgment; dismissing Mr. Sanford's complaint with prejudice as against TIAA-CREF; denying Mr. Sanford's motion for summary judgment; denying Mr. Sanford's motion for discovery and for the consideration of evidence outside the administrative record; and granting TIAA-CREF such other relief as the Court deems proper. In the alternative, should this Court reverse the order and judgment of the District Court, TIAA-CREF requests that this Court enter an order denying all relief requested by Mr. Sanford and directing that the matter be remanded to TIAA-CREF for further consideration.

Dated: October 24, 2014                   **MACKENZIE HUGHES LLP**

By:    */s/* W. Bradley Hunt

W. Bradley Hunt

Attorneys for Defendant TIAA-CREF Individual & Institutional Services, LLC,

101 S. Salina Street

P.O. Box 4967

Syracuse, NY 13221-4967

(315) 474-7571

bhunt@mackenziehughes.com

36

## <u>CERTIFICATE OF SERVICE</u>

I, W. Bradley Hunt, do hereby certify that on October 24, 2014 I electronically filed the brief of Defendant-Appellee TIAA-CREF, Individual and Institutional Services, LLC with the U.S. Court of Appeals for the Second Circuit using the CM/ECF system, which sent notification to all counsel of record.

Dated: October 24, 2014              **MACKENZIE HUGHES LLP**

By:    */s/* W. Bradley Hunt
         W. Bradley Hunt
         Attorneys for Defendant TIAA-CREF Individual &
         Institutional Services, LLC,
         101 S. Salina Street
         P.O. Box 4967
         Syracuse, NY 13221-4967
         (315) 474-7571
         bhunt@mackenziehughes.com

## <u>CERTIFICATE OF COMPLIANCE  WITH F.R.A.P.  RULE 32(a)</u>

1.  This Appellee's Brief complies with the rules contained in F.R.A.P.

Rule 32(a)(7) for a brief produced with a proportionally spaced font. The length of

this brief is 8,789 words.

2.  This Appellee's Brief complies with the typeface requirements of Fed. R.

App. P. 32 (a)(5) and the type style requirements of  Fed. R. App. P. 32 (a)(6)

because this brief has been prepared in a proportionally spaced  typeface using the

Microsoft Word Office 10 word processing program in Times New Roman 14-

point font.

Submitted this 24th day of October, 2014.


**MACKENZIE HUGHES LLP**

By:     */s/* W. Bradley Hunt
        W. Bradley Hunt
        Attorneys for Defendant TIAA-
        CREF Individual &
        Institutional Services, LLC,
        101 S. Salina Street
        P.O. Box 4967
        Syracuse, NY 13221-4967
        (315) 474-7571
        bhunt@mackenziehughes.com

38